[No. 2215.]

AUSTIN SMITH *v.* THE STATE.

1. PRACTICE—FORMER JEOPARDY.—The record disclosing that the jury on the former trial were not discharged until they had been considering of their verdict for two days, and that they were discharged because they had been kept together until it became altogether improbable that they

could agree, the defendant's plea of former jeopardy was properly over-ruled and stricken out.

2. PERJURY—PRACTICE.—Article 746 of the Code of Criminal Procedure provides that "in trials for perjury no person shall be convicted except upon the testimony of two credible witnesses, or one credible witness cor-roborated strongly by other evidence as to the falsity of defendant's statements under oath, or upon his own confession in open court.

SAME—CHARGE OF THE COURT.—Credible witness, as legally defined, sig-nifies "one who, being competent to give evidence, is worthy of belief." One of the two witnesses who testified to the perjury in this case having been impeached in two or more methods, the defense asked the trial court to charge the jury, 1: "If from the evidence the jury believe that George Thompson is not a credible witness, they must disregard the whole of his testimony. 2. A credible witness is one whose character for truth is above reproach. If the jury find from the evidence that the witness George Thompson is not a credible witness, they must disregard his testimony." *Held* that the evidence warranted the requested instruc-tions, and the trial Court erred in refusing them, there being no equiva-lent in the charge of the Court.

APPEAL from the District Court of Williamson. Tried below before the Hon. A. S. Walker.

The conviction in this case was for perjury, and the penalty awarded was a term of five years in the penitentiary. The perjury assigned in the indictment was in substance that, on the trial of one Green Thomas for the theft of a hog, the de-fendant falsely testified that he was at the house of the said Thomas on the night of the alleged theft, and that the said Thomas was at his home on and during that night and did not leave it, and that the said Thomas did not have a hog at or about his house that night, and that he, defendant (then wit-ness), did not assist the said Thomas, or other person, to clean or dress a hog on that night.

County Clerk J. W. Hodges was the first witness for the State. He produced the record of the County Court of Williamson county, for the February term, 1885, from which the State read in evidence the affidavit and information charging one Green Thomas with the theft of L. C. Bullian's hog, the minutes of the court showing the proceedings on the trial of the said Thomas, and the judgment of the court pronounced upon the verdict returned by the jury. The witness Hodges testified that he administered the witness oath to the defendant as a witness for the defense on that trial, and that the defendant testified on that trial that he went to the house of Green Thomas on the night

the hog was claimed to have been stolen, arriving at about eight o'clock. That he found the said Green Thomas and George Thompson at the house. That he remained at Thomas's house all of that night, and that the said Thomas did not leave his. house on that night after the said eight o'clock. That Thomas. had no hog at his house when he, defendant (then witness), arrived, and brought no hog to his house during the said night, and that no other person brought a hog to that house on that night, and that no hog was cleaned or dressed as pork at Thomas's house on the said night.

T. B. Cochran, County Attorney of Williamson county, Texas, testified substantially as did the witness Hodges as to the evidence given on the Thomas trial by the defendant, adding that. defendant testified that he ate no pork at Thomas's house on that night, but did on the next morning.

George Thompson testified, for the State, in substance that, in December, 1884, he lived with Green Thomas, on the Gabriel in Williamson county. Witness got to Green Thomas's house between eight and nine o'clock on the night the hog was charged to. have been stolen. He found Green Thomas and wife and his (witness's) wife at Thomas's house. Defendant arrived a few minutes later. After some talk, Thomas remarked that he had a quarter of beef in the woods and requested witness to go with him to bring it home. Witness went and the defendant saw them go, and knew that they went. Thomas led the way to a place in the woods where he had secreted the carcass of a hog which witness recognized at once as belonging to Mr. Bullian. They took the hog to Thomas's house, where it was scraped, cleaned and cut up, the defendant bringing and heating the water, and generally assisting in reducing the carcass to pork.

The material part of the witness's cross examination was his denial that, since the trial of Green Thomas, he told one Gus. Berry that if he had known the defendant was going to testify that Thomas had no hog at his house on the night of the alleged. theft, he would have testified to the same fact; and his denial that he ever told Tom Smith that he did not know whether the defendant saw the hog at Thomas's house or not.

Phinis Thompson, the wife of George Thompson, testified to. substantially the same facts as stated by her husband, except. that she only saw the defendant aid in reducing the hog to pork to the extent of bringing a bucket of water. Defendant ate

some of the pork both for supper on that night and breakfast on the next morning.

L. C. Bullian, for the State, testified to the loss of his hog in December, 1884, and to the fact that the State's witness, George Thompson, told him he would find out about his hog by having Green Thomas arrested. The State closed.

Gus Berry, the first witness for the defense, testified that, subsequent to the trial of Green Thomas, George Thompson told him that if he had known that defendant was going to testify that there was no hog at Green Thomas's house on the night of the alleged theft, he would have testified to the same effect.

Tom Smith testified, for the defense, that, subsequent to the trial of Green Thomas, George Thompson told him that he had never said that defendant saw the hog at Green Thomas's and that he did not know whether he did or not.

A number of witnesses for the defense pronounced the reputation of George Thompson for truth and veracity to be bad, and that of the defendant to be good. Two witnesses for the State supported George Thompson's reputation for truth and veracity as good.

The motion for new trial raised the questions discussed in the opinion.

*Makemson & Price*, and *Fisher & Townes*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant's plea of former jeopardy was properly overruled and stricken out, it appearing from the face of said plea that the jury on the former trial, which had been discharged over objection of defendant, were not discharged until after they had been out considering of their verdict in the case for two days, and that then they were discharged because it appeared that they had been kept together for such a time as to render it altogether improbable that they could agree. In discharging them, under the circumstances, the court, in our opinion, did not abuse its discretion. (Code Crim. Proc., Art. 701; Powell v. The State, 17 Texas Ct. App., 346; Schindler v. The State, Id., 408: Varner v. The State. 20 Texas Ct. App., 107; Pizano v. The State, Id., 139.)

Appellant was tried and convicted for perjury. The two witnesses against him were George Thompson and his wife.

George Thompson was impeached in two ways: First, by proving contradictory statements made by him to what he swore as a witness; and, second, by proof that his general reputation for veracity was bad. Besides this, his testimony was contradicted in some particulars by his wife, and in some particulars by the witness Bullian. Besides this, his own testimony showed him to have been an accomplice in the theft of Bullian's hog, the theft of which caused the prosecution, in which defendant was charged to have committed perjury. There was no evidence strongly corroborating the testimony of George Thompson and his wife as to the perjury committed by this defendant. (Gabrielsky v. The State, 13 Texas Ct. App., 428; Hernandez v. The State, 18 Texas Ct. App., 135.) Now, it is expressly provided by statute that "in trials for perjury no person shall be convicted, except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence as to the falsity of defendant's statements under oath, or upon his own confession in open court." (Code Crim. Proc., Art. 746; Gartman v. The State, 16 Texas Ct. App., 215; Anderson v. The State, 20 Texas Ct. App., 312.)

Mr. Bouvier, in his Law Dictionary, defines a credible witness to be "one who, being competent to give evidence, is worthy of belief." Was the witness George Thompson such a witness? This was a question of fact to be determined by the jury under appropriate instructions from the court. The general charge did not give them such an instruction. Defendant requested two special instructions which in our opinion, under the facts in this case, it was error to refuse. They were: "1. If from the evidence the jury believe that George Thompson is not a credible witness, they must disregard the whole of his testimony. 2. A credible witness is one whose character for truth is above reproach. If the jury find from the evidence that the witness George Thompson is not a credible witness, they must disregard his testimony." As stated above, there being but the two witnesses as to the perjury, and George Thompson having been impeached, the instructions were called for by the facts.

For error in refusing defendant's special instructions, the judgment is reversed and the cause remanded.

*Reversed and remanded.*