## ROY KENT v. STATE.

No. A-1149.   Opinion Filed October 5, 1912.

(126 Pac. 1040.)

1.   **HOMICIDE—Instructions—Grade or Degree of Offense.** In a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests; and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends to prove should be submitted to the jury, whether it be requested on the part of the defendant or not.

2.   **SAME—Instructions—Grade or Degree of Offense—"Murder," "Premeditated Design," "Excusable Homicide," "Culpable Negligence," "Manslaughter in the First Degree," "Manslaughter in the Second Degree."** See opinion for approved instructions submitting the issue of murder, manslaughter in the first degree, and of manslaughter in the second degree.

3.   **TRIAL—Former Jeopardy—Discharge of Jury.** The discharge of a jury in a criminal case without the consent of the defendant because the jurors are unable to agree will not sustain a plea of former jeopardy on a subsequent trial.

4.   **SAME—Deliberation of Jury—Discharge Before Verdict.** Section 6867 (Comp. Laws 1909), Procedure Criminal, provides: "Except

as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered it in open court, unless by the consent of both parties entered upon the minutes, or unless at the expiration of such time as the court deems proper, it satisfactorily appear that there is no reasonable probability that the jury can agree.''

Under the statute, the length of time the jury should be required to deliberate and the probability of an agreement must be determined by the court from the facts and circumstances of the particular case and the court's discretion will be conclusive, unless it has abused its discretion in that regard.

5.    HOMICIDE—Evidence—Sufficiency. Evidence held to sustain a conviction of manslaughter in the first degree.

(Syllabus by the Court.)

*Appeal from Superior Court, Pittsburg County;*
*P. D. Brewer, Judge.*

Roy Kent was convicted of manslaughter in the first degree, and appeals. Affirmed.

*Geo. M. Porter, W. H. Fuller,* and *Guy A. Curry,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

DOYLE, J.   The plaintiff in error, Roy Kent, hereinafter referred to as the defendant, was informed against for the murder of Charles Hodge, and was convicted of manslaughter in the first degree.

The information was filed in the superior court of Pittsburg county, June 2, 1910.   Upon arraignment the defendant entered a plea of not guilty.   June 23d the case came on for trial, and a jury was impaneled and sworn to try the case, June 24th.   The cause was submitted to the jury.   June 25th the jury reported in open court that it could not agree.   Whereupon the jury was by the court discharged from further consideration of the case. Thereafter, on the 15th day of February, 1911, the case was again called for trial.   The defendant entered a plea of former jeopardy. To this plea the state interposed a demurrer that was sustained, and the trial proceeded on a plea of not guilty.

The salient facts as shown by the evidence, briefly stated, are as follows:

On February 26, 1910, in the town of Quinton, Pittsburg county, the defendant shot and killed Charles Hodge. The defendant had known deceased for several years, and during that day the defendant and deceased had been drinking together. The evidence tended to prove, and it was assumed during the trial, that deceased was a peace officer. About 5 o'clock in the afternoon deceased arrested John Sanders, and, upon being searched after his arrest, whisky was found upon him. At the time, or immediately after, Sanders' arrest, the defendant said to deceased that he wanted to talk to him. Deceased said to the defendant: "Go on away. I ain't got time to fool with you." Deceased and Sanders, at Sanders' request, went to the house of one Honea, near the home of the defendant, for the purpose of securing Honea on Sanders' bond. As they went to Honea's house, they passed the house where the defendant lived, and Sanders saw the defendant going into his house. They went to Honea's house and stayed there only a few minutes. Deceased, Sanders, and Honea started from Honea's house in a northwesterly direction. The defendant was seen standing near a tree at the northwest corner of Honea's yard with a Winchester in his hands. As they walked northwest, the defendant walked northwest and came close to Honea, Sanders, and the deceased about the middle of the street. The defendant said to them, "What are you doing?" or "Where are you going?" The three men (Sanders, Honea, and deceased) at practically the same time said, "Don't shoot," and without other words the defendant discharged a Winchester rifle, the bullet entering the body of the deceased two or three inches to the right and below the left nipple, killing him almost instantly. One witness heard the remark, "God damn you," and the deceased turned and the gun was fired. This witness further testified that the defendant held the gun in a "right hip shot" position. After the defendant shot deceased, and deceased had staggered and fallen, defendant continued to hold the gun in about the same position, pointed in the direction of the other men. Honea said to him: "You have done enough. Don't do any more." The de-

fendant turned the muzzle of the gun towards Sanders, and said to him, "Get in the house," or "Go in the house." The defendant, after standing there a few minutes, went south from his house, and stayed in the woods until about 8 o'clock, that night, when he returned to his house. He then went to his uncle's house, from there to Wilburton, from Wilburton to Red Oak, where he was arrested on the evening of February 27th, about 6 o'clock. The defendant's only defense was that the gun was accidentally discharged; that he and deceased were friends; that the reason for having the gun with him at the time of the homicide was that he had negotiated for its sale to his uncle, and on this particular day he was needing money to pay certain men working for him, and was taking the gun to his uncle's.

The jury found the defendant guilty of manslaughter in the first degree, and assessed his punishment at imprisonment in the penitentiary for nine years. March 1, 1911, a motion for a new trial was overruled and judgment and sentence was entered in accordance with the verdict. From this judgment the defendant prosecuted an appeal by filing in this court on May 15, 1911, his petition in error with case-made. The petition contains numerous assignments of error, about one-half of which are abandoned in the brief, and only one of the assignments argued is supported by citation of authority.

The first assignment of error is "that the verdict is contrary to and unsupported by the law and by the evidence." It is contended under this assignment that manslaughter in the second degree is the only offense of which the defendant could have been convicted under the evidence. We think the evidence in the case tended strongly to prove that the killing was premeditated and deliberate, and was amply sufficient to support a verdict for murder with the extreme penalty. Fortunately for the defendant, the jury in mercy, or in a mistaken view of the law, or the facts, found him guilty of manslaughter in the first degree. This the jury had a right to do.

The same question is raised in several assignments of error, based upon exceptions taken to the instructions given by the

court. The trial judge with unusual ability and care instructed the jury. The charge contains eighteen instructions. The court instructed the jury as to the crime charged and the plea entered, and then gave the instructions excepted to as follows:

"No. 2. The court instructs you as the law applicable to this case the following: Homicide is the killing of one human being by another, and is murder when perpetrated without authority of law, and with premeditated design to effect the death of the person killed. In order to constitute murder under this clause of the statute, it is essential that the homicide be committed with the premeditated design on the part of the accused to unlawfully take the life of the person slain, or some other person, and, in order that you may fully understand the legal meaning of the words 'premeditated design' as used in this connection, I charge you that, the unlawful killing being established to your satisfaction beyond a reasonable doubt, then, to determine the grade of the homicide, it becomes necessary for you to inquire into the condition of the mind of the party killing, and in reaching this conclusion the important questions to be considered are: Do the facts and circumstances in the case, at the time of the killing, and before and immediately after that time, having connection with or relation to it, furnish satisfactory evidence of a deliberate mind on the part of the person killing to do the killing at the time he does the act that results in the killing; and do these facts and circumstances show a formed design on the part of the person killing to take the life of the person slain or of some other person? If they do, then the killing will be premeditated design, and will be murder. Premeditated design includes malice aforethought, and accordingly the jury must be satisfied from the evidence, beyond a reasonable doubt, that the killing was the consummation of a previously formed design to take the life of the person killed or of some other person, and that the design to kill was formed deliberately, with a deliberate mind; that is, at a time when the mind of the person killing was self-possessed and capable of contemplating the consequences of the act proposed to be done. There is, however, no definite space of time necessary to intervene between the formed design to kill and the actual killing. A single moment of time may be sufficient; all that is required being that the mind be cool and deliberate in forming its purpose, and that the design to kill is formed, and the design to effect death is inferred from the fact of the killing, unless the circumstances raise a reasonable doubt as to whether such design existed. When the evidence satisfies

Cr. 8—6

your mind beyond a reasonable doubt that the killing was the result of a previously formed design by the defendant to kill the deceased, or some other person, and that the design was formed when the mind was calm and deliberate and capable of contemplating the consequences of the act proposed to be done by him, and such killing is further shown to have been unlawful, and done with malice and premeditated design, then the homicide is murder, and your verdict should be rendered accordingly. To warrant a conviction for murder, the jury must be satisfied by the evidence beyond a reasonable doubt that the defendant, before the act, deliberately formed the design with a calm and deliberate mind to kill the deceased or some other person, and that he proceeded in accordance with that design to the infliction of the death wound. The act must not result from a mere sudden, rash, inconsiderate impulse, passion or excitement, however unjustifiable and unwarranted it may be. Now, if you believe from the evidence beyond a reasonable doubt that the defendant, as charged in the information, in Pittsburg county, Okla., with premeditated design, as hereinbefore explained to you, with a gun, same being a deadly weapon, or instrument well calculated and likely to produce death by the manner in which it was used, with a sedate and deliberate mind, and formed design to kill, did unlawfully shoot and thereby kill the said Charles Hodge, hereinafter referred to as the deceased, you will find the defendant guilty of murder, and so state in your verdict, affixing the penalty therefor; that penalty being death or imprisonment in the state penitentiary at hard labor for life:

"(Defendant excepts to instruction No. 2 in open court. Exceptions allowed. P. D. Brewer, Judge.)

"No. 3. You are further instructed in this case that the defendant, having pleaded he is not guilty, admits the killing, but claims he is excusable therefor because he says the shooting that caused the death of the deceased was unintentional, accidental, and a mere misadventure, and happened under such circumstances as to render him excusable therefor under the law. It therefore becomes necessary that you be instructed on this phase of the case, and that you be informed under what circumstances homicide is excusable under the law of Oklahoma, and also that you be instructed as to manslaughter in both the first and second degrees, both of which are criminal degrees of homicide, and are included in and may be considered under an information charging murder.

"(Defendant excepts to No. 3. Exceptions allowed. P. D. Brewer, Judge.)

"No. 4. Homicide is excusable when committed by accident and misfortune in lawfully correcting a child or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent.

"No. 5. Manslaughter in the first degree is defined as follows: When a homicide is perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor, or when perpetrated without a design to effect death, and ·in a heat of passion, but in a cruel and unusual manner or by means of a dangerous weapon, unless it is committed under such circumstances as to constitute excusable or justifiable homicide. Under the circumstances and evidence in this case a charge on justifiable homicide is unnecessary.

"(Defendant excepts to No. 5. Exception allowed. P. D. Brewer, Judge.)

"No. 6. You are further instructed that under the laws of Oklahoma it is unlawful for any person to point any pistol or any other deadly weapon, whether loaded or not, at any other person or persons, either in anger or otherwise, and that any person guilty of so doing would be guilty of a misdemeanor under the law. You are further instructed that the law of Oklahoma is that every person who willfully assists any prisoner in escaping or attempting to escape from the custody of any officer or person having the lawful charge of such prisoner under any process of law, or under any lawful arrest, is guilty of a misdemeanor.

"(Defendant excepts to No. 6. Exception allowed. P. D. Brewer, Judge.)

"No. 7. You are further instructed that if you believe from the evidence and circumstances in the case beyond a reasonable doubt that the defendant killed said deceased, and that the killing was unlawful, and was not excusable homicide,  as herein explained to you, but you have under the evidence and circumstances in the case a reasonable doubt as to whether the defendant is guilty of murder, as herein defined to you, then it would be necessary for you to consider whether or not the defendant is guilty of manslaughter in either the first or second degree, as herein defined to you, both of which are lower degrees of homicide, and which are included in and may be considered under an information charging murder.    To constitute manslaughter in ·the first degree, as herein defined to you, it is essential that the homicide be committed by the accused, that the killing be unlawful; that is, that it was not justifiable or excusable under the law. If the killing be purposely and unlawfully done, without a design to effect death, and in a heat of passion, but in a cruel and

unusual manner, or by means of a dangerous weapon, or while the person doing the killing was engaged in the commission of a misdemeanor, then, under such circumstances, the homicide would be manslaughter in the first degree. You are further instructed that if, under all the evidence and circumstances in the case you have a reasonable doubt as to whether or not the defendant is guilty of murder, the defendant is entitled to the benefit of that doubt, and you cannot convict him of murder, but if from all the evidence and circumstances in the case you believe beyond a reasonable doubt that the defendant killed said deceased, as alleged in the information, in Pittsburg county, Okla., and that the killing was unlawful, and purposely done, as alleged in the information, by the defendant, without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon, or while the defendant was engaged in the commission of a misdemeanor, and under such circumstances as not to be excusable under the law, as herein given to you, then the defendant would be guilty of manslaughter in the first degree, and you should so find, and you may assess the punishment therefor, should you find him guilty of manslaughter in the first degree; that punishment being imprisonment in the state penitentiary for any definite period of time not less than four years.

"(Defendant excepts to No. 7. Exception allowed. P. D. Brewer, Judge.)

"No. 8. The court further instructs you that if you believe from the evidence and circumstances in the case beyond a reasonable doubt that the defendant killed deceased, as alleged in the information, and that the killing was unlawful, and was not excusable homicide, as herein explained to you, but you have under the evidence and the circumstances a reasonable doubt as to whether the defendant is guilty of murder or manslaughter in the first degree, as herein defined to you, then it would be necessary for you to consider whether or not the defendant is guilty of manslaughter in the second degree, as herein defined to you, and which is a lower degree of homicide than the other two degrees, and which is included in and may be considered under an information charging murder.

"(Defendant excepts to No. 8. Exceptions allowed. P. D. Brewer, Judge.)

"No. 9. Homicide is manslaughter in the second degree when caused by the act, procurement, or culpable negligence of another, which, under the law, is not murder or manslaughter in the first degree, nor excusable nor justifiable homicide.

"(Defendant excepts to No. 9. Exceptions allowed. P. D. Brewer, Judge.)

"No. 10. Culpable negligence is the want of that usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions, and you are instructed that a person handling a deadly weapon will be required under the law to use a higher degree of care and circumspection than if using an instrument ordinarily harmless.

"(Defendant excepts to No. 10. Exceptions allowed. P. D. Brewer, Judge.)

"No. 11. To constitute manslaughter in the second degree, as herein defined to you, it is essential that the homicide be committed by the accused; that the killing be unlawful that is, that it was not justifiable or excusable under the law; if the killing be purposely and unlawfully done without a design to effect death, but by the act, procurement or culpable negligence of another, which, under the law as herein given to you, is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, then, under such circumstances, the homicide would be manslaughter in the second degree. On this phase the court instructs you that, if under all the evidence and circumstances you have a reasonable doubt as to whether or not the defendant is guilty of murder or of manslaughter in the first degree, then the defendant is entitled to the benefit of that doubt, and you cannot convict him of either of those degrees of homicide. But if from all the evidence and circumstances in the case you believe, beyond a reasonable doubt, that the defendant killed the said deceased, as alleged in the information, in Pittsburg county, Okla., and that the killing was unlawful and purposely done, as alleged in the information, without a design to effect death, but by the act, procurement, or culpable negligence of the defendant, which, under the provisions of the law, and these instructions, is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, and was not done by accident or misfortune, in the doing of a lawful act by lawful means, with usual and ordinary caution, and without any criminal intent. then the defendant would be guilty of manslaughter in the second degree, and you should so find, and, if you find the defendant guilty of manslaughter in the second degree, you may assess the punishment therefor, that being imprisonment in the state penitentiary for not more than four years and not less than two years, or by imprisonment in the county jail not ex-

ceeding one year, or by fine not exceeding one thousand dollars, or by both fine and imprisonment.

"(Defendant excepts to No. 11. Exception allowed. P. D. Brewer, Judge.)

"No. 12. You are instructed that if you entertain in your minds a doubt, reasonable as in these instructions defined, as to whether or not the killing of deceased was accidental or occasioned by misfortune in the doing of a lawful act by lawful means with usual and ordinary care and caution and without any unlawful intent, then it is your duty to resolve said doubt in favor of the defendant, and return a verdict of not guilty.

"(Given.   P. D. Brewer, Judge.)"

The evidence in the case presented the question of whether the homicide was perpetrated without a design to effect death by the defendant while engaged in the commission of a misdemeanor; that is, pointing a deadly weapon, whether loaded or not, at any other person or persons. The evidence also tends to show that the defendant was guilty of certain conduct that might legitimately be construed as an attempt to assist the prisoner, Sanders, in escaping from the custody of the deceased as an officer. It was the duty of the court to instruct the jury upon manslaughter in the first degree, for the reason that the evidence presented such issue. Section 6829 (Comp. Laws 1909), Procedure Criminal, provides that:

"When it appears that a defendant has committed a public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degree only."

Section 6826 provides:

"On the trial of an indictment questions of law are to be decided by the court and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound nevertheless to receive the law which is laid down as such by the court."

Under this section, the jury are the sole judges as to questions of fact; and by section 6829 it is provided, in effect, that a jury can only find a defendant guilty of that degree of crime of which they entertain no reasonable doubt. In the case of

*Cannon v. Territory,* 1 Okla. Cr. 600, 99 Pac. 622, this court held:

"In a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests; and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends to prove should be submitted to the jury, whether it be requested on the part of the defendant or not. It is the duty of the court to say as a matter of law if there is any evidence that would tend to reduce the degree of the offense to manslaughter in the second degree."

The several assignments of error based upon the rulings of the court in the admission and exclusion of testimony are without merit.

The remaining assignment of error insisted upon is that the court erred in sustaining the demurrer to the plea of former jeopardy on the part of plaintiff in error. Conceding that the question was regularly raised on the trial, it was properly overruled. The plea was based upon the theory that by the discharge of the jury upon the first trial without the consent of the defendant he was entitled to be then acquitted, and therefore could not be legally put upon trial a second time. The jury in the former trial retired to deliberate on June 24, 1910. They were returned into court June 25, 1910, at which time the jury was discharged for the reason that it was unable to agree. The record as to the former trial shows:

"And now the state is present by T. R. Dean, county attorney, and the defendant present in his own proper person and represented by counsel, Geo. M. Porter, Esq., and Guy A. Curry, Esq., and now comes the jury heretofore impaneled and sworn for the trial of said cause, and, after many hours' deliberation, they report into court, and each juror, having been interrogated by the court, answers that in his individual judgment it would be impossible for the jury to ever arrive at a verdict in this case, and the court, after considering the matter, believes it would be impossible for this jury to ever return a verdict, and therefore. it is ordered by the court that a mistrial be declared in this case. and that the jury be discharged from further consideration of this cause, and the defendant remain in the custody of the sheriff."

The question, for what causes the jury in criminal trials may be discharged before returning a verdict, the defendant not consenting, without the trial resulting as jeopardy in bar of another trial, has never been passed upon by this court. By the common law and by our statute it is contemplated that the jury shall not be discharged until a verdict is rendered and returned into court. But it needs no reasoning to show that this theory of the law cannot always be carried into effect without defeating the ends of justice. It is the settled doctrine of American law that, without the consent of the defendant, the court has the power to discharge a jury before verdict "from manifest necessity," and to hold the defendant for another trial. The prevailing rule is that when, after a reasonable confinement, the jury avow an utter inability to agree in respect to their verdict, the court in the exercise of a sound discretion may discharge them, and that such discharge will not operate as a bar to further prosecution; and it is further held that the necessity for the discharge of the jury, whatever it may be, must appear upon the record, and it must be adjudged by the court that such necessity existed for the discharge of the jury. *Thompson v. U. S.,* 155 U. S. 271, 15 Sup. Ct. 73, 39 L. Ed. 146; *United States v. Perez,* 9 Wheat. 579, 6 L. Ed. 165; *Kelly v. U. S.,* (C. C.) 27 Fed. 616; *U. S. v. Bigelow,* 3 Mackey (D. C.) 393; *Smith v. State,* 22 Tex. App. 196, 2 S. W. 542; *State v. Pierce,* 77 Iowa, 245, 42 N. W. 181; *Stocks v. State,* 91 Ga. 831, 18 S. E. 847; *Commonwealth v. Bowden,* 9 Mass. 494; *Anderson v. State,* 86 Md. 479, 38 Atl. 937; *State v. Arthur,* 32 Mo. App. 24; *Dreyer v. People,* 188 Ill. 40, 58 N. E. 620, 59 N. E. 424, 58 L. R. A. 869; *State v. Hagar,* 61 Kan. 504, 59 Pac. 1080, 48 L. R. A. 254; 12 Cyc. 273, par. 14, and citations. These rules have been further relaxed by the following provision of our Criminal Procedure Act (section 6867, Comp. Laws 1909) :

"Except as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered it in open court, unless by the consent of both parties entered upon the minutes, or unless at the expiration of such time as the court deems proper, it satis-

factorily appear that there is no reasonable probability that the jury can agree."

Authority to discharge the jury without the consent of the defendant exists under the statute if, "at the expiration of such time as the court deems proper, it satisfactorily appear that there is no reasonable probability that the jury can agree." The questions whether they have been so kept together and whether there is no reasonable probability that they can agree are judicial questions. As such, they cannot be arbitrarily or capriciously determined by the court. The length of time a jury should be kept together, and the probability of an agreement, must be determined by the court from the facts and circumstances of the particular case, and the court's discretion will be conclusive unless it has abused its discretion in that regard. In *Dreyer v. People, supra,* it is well said:

"Every judge who has presided over criminal trials knows that cases are often submitted to juries upon which intelligent men cannot honestly avoid disagreement on the question of guilt or innocence. To compel consent to a verdict under such circumstances, under penalty of being confined for days, weeks, or possibly months, would shock the sense of justice, and often result in dishonest and unjust acquittals or convictions."

There are other assignments of error, but no one of them requires notice. From a careful examination of the record, we do not find that any error was committed to the prejudice of the defendant.

The judgment of the superior court of Pittsburg county is therefore affirmed.

FURMAN, P. J., and ARMSTRONG, J., concur.