JIM CROWELL v. STATE.

No. A-6429.   Opinion Filed April 20, 1929.
(276 Pac. 518.)

Grant Gillespie and Eaton, Burroughs & Cavanaugh, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Okmulgee county on a charge of manslaughter, and his punishment fixed by the jury at 12 years in the penitentiary.

The state contended that the defendant was guilty of murder, and offered evidence in support of such theory tending to show:   That the defendant and Willie Bruner, deceased, had been neighbors for a number of years and were friends.   That the defendant, who lived on a farm near the deceased, was running a public dance on his

place, and that dances were held in the barn every Saturday night and during the Christmas holiday week previous to the killing in this case. That the deceased attended these dances, and that there was no difficulty between the deceased and the defendant until the night of the killing. That on the night deceased was killed and after the dance was over, the deceased with some friends went to the dwelling of the defendant, whose wife was selling hamburgers to the guests at the dance. That any one who had the price could attend these dances and obtain lunch. The defendant operated the dance and sale of the hamburgers for profit. That a controversy arose between the defendant and one Ote Green, and that the defendant ordered Ote Green to leave the house, which he did. That in a few minutes after Green left, the deceased left, accompanied by Frank Bell and Bessie Schoonover, and went down a lane leading from the home of defendant to the highway. That while the deceased, Frank Bell, and the Schoonover woman were in this little lane, the defendant came out of his house and followed them down the lane and had a controversy with the deceased. That defendant left, saying, "I will kill the son of a bitch," and went back to his house. That deceased left and said. "Let's go," and went on down the lane to the highway accompanied by Bell and the Schoonover woman. That after they reached the highway and were off the premises of the defendant, they looked back and saw the defendant coming with a rifle in his hand. That immediately the deceased ran up the road some distance and lay down in the snow, while Bell turned and walked toward the defendant. That when the defendant was within 25 or 30 steps of the deceased, who was lying on the ground, he took deliberate aim and fired one shot, which penetrated the head of the deceased above the left eye and at the edge of the hair, producing a wound from which the deceased died in about two hours. That

defendant then walked up to the deceased and remarked, "I killed him dead as Hell." That defendant then went to his house, got what money his wife had, and immediately left, telling her he was going. That the defendant returned to his home the next morning and was placed under arrest by the sheriff's force.

The state introduced sufficient evidence, if believed by the jury, to establish this state of facts, and the jury would have been justified, under this evidence, in finding the defendant guilty of murder in the first degree.

The defendant pleaded self-defense, and according to his own story there was a difficulty between him and the deceased in his home caused by the misconduct of the deceased, Frank Bell, and Bessie Schoonover, who were together in his home. That defendant finally requested them to leave his home, and they went down into the lane leading from the house into the road, where the deceased was gobbling and threatening defendant and making unnecessary disturbances. That deceased and his friends were threatening to come back to the house and kill him, and he was afraid they would come back to the house and kill him or some of his family. That defendant took his 30-30 caliber Winchester and went down the lane toward the road intending to try and persuade deceased and his friends to go on home. That they were out on the highway at the time he reached them. That he carried his rifle in such a way that the deceased did not know he was armed, and before reaching the deceased he laid his rifle down in the snow and went up to the deceased. That deceased struck him on the head with a pistol and snapped the pistol in his face, and that, being in great danger of being killed, he picked up his rifle and shot the deceased. That he only shot because he believed it was necessary to do so in order to save his own life.

The defendant had a right to request the deceased and his friends to leave his house, and had a right to

use the necessary force to cause them to leave his house. The defendant had the right, if the deceased had returned to his house and the defendant believed that he or any member of his family was in danger at the hands of the deceased, to defend his house and his family against any aggressive act of the deceased. But in this case, according to the defendant's own story, the deceased had left the house and gone out on the public highway. The defendant taking his rifle followed the deceased out on the public highway, where he says he laid the gun down in the snow and walked up to the deceased, and that the deceased thereupon struck him on the head with a pistol and snapped the pistol and tried to shoot him, and that immediately thereafter the defendant picked up the rifle and shot the deceased.

Under no theory of law could this state of facts authorize the killing of the deceased, nor do the circumstances detailed by defendant make the killing of the deceased done in self-defense.

Leaving out of consideration all the evidence offered by the state and all the evidence offered by the defendant except his own testimony, and taking only the story of the defendant in the case, the defendant was guilty of manslaughter.

The defendant assigns numerous grounds of error, but argues only three.

First. "For error of the court in making prejudicial remarks and statements in the presence of the jury during the trial of said cause, to which said prejudicial remarks and statements of the court the defendant duly objected and excepted."

During the progress of the trial counsel for the defendant asked many improper and incompetent questions, and when the court would sustain the objection of the county attorney, counsel for the defendant would

make some remarks to the court which would occasionally bring forth a reply from the trial judge.

In the case of Jones v. State, 20 Okla. Cr. 154, 201 P. 664, this court said:

"The trial court should refrain from making disparaging personal remarks concerning any of the attorneys engaged in the trial. The attorneys, on the other hand, should refrain from unnecessarily irritating the court. A trial in a court of justice should not be permitted to degenerate into a contest of wits or skill between the court and attorneys, or between the attorneys themselves. Held, in this case, that the attorneys for defendant were in some measure responsible for the disparaging remarks of the court, and that the remarks so made, under all the circumstances, were not prejudicial."

In the case at bar the remarks of the trial judge were provoked by the counsel for defendant and are not of such a nature as would warrant a reversal under the circumstances revealed in this case.

In the case of Miller v. Territory, 15 Okla. 423, 85 P. 239, the Supreme Court of Oklahoma Territory, in paragraph 5 of the syllabus, says:

"It is not every improper remark of a trial court that will justify a reversal of a criminal case. If the remarks are such that might reasonably influence the jury against a defendant, a new trial should be granted; but if, after a full consideration of the entire record, it is clear that the verdict is right, and that, even if the remarks had not been made, the jury could not reasonably have returned a different verdict, the judgment will be affirmed."

In the body of the opinion that court said:

"It is the duty of trial courts to guard well their expressions, and to act with dignity and discretion, to the end that the jurors may not be influenced by anything except the evidence, and they should be left to make their own deductions therefrom. Attorneys also owe an equally high duty to the court. They should not be per-

mitted to enjoy the benefits derived from questionable conduct unnoticed; for, if such were the case, then the services of the lawyer who acts from a high sense of duty would be unsought, and the lawyer who adopts un-, professional means would be able to render his client the more valuable service. A defendant is entitled to a fair and impartial trial; but this does not mean that the prosecution alone shall be fair, and the defendant left to take advantage of every cunning within his power; and where he or those who represent him, with his knowledge, do wrongful acts, while engaged in his defense, which reflect discredit upon him or his witnesses, it is only just that he should suffer the consequent inferences flowing therefrom, should those facts become known to the jury."

The defendant next complains:

"For misconduct of the county attorney in his closing argument to the jury, objected and excepted to at the time by the defendant, which said argument or statement of the county attorney is fully set out by the affidavits of two certain bystanders, attached hereto and marked 'Exhibits A and B,' and made a part of this record, and certified to by the trial judge as a part of the record."

In the case of Davis v. State, 7 Okla. Cr. 322, 123 P. 560, this court said:

"A conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might, in some degree, have influenced the verdict against the defendant."

This was a hotly contested trial. Able counsel represented both the state and the defendant. Considerable ill feeling had been engendered by the crime charged against the defendant, and this feeling was manifest throughout the trial by both the prosecution and the defense. The trial court promptly sustained objections of both the state and the defense to improper testimony,

and promptly reprimanded the county attorney for remarks made by the county attorney during the argument of the case and instructed the jury not to consider the improper remarks of the county attorney. It would be impossible for the trial court to keep all error out of the record. But we are satisfied from a reading of the record that the trial judge tried to be fair and tried to conduct the trial in such a manner that the rights of the defendant would not be prejudiced. Under the state's theory of the case and the evidence offered in support 'of that theory, the jury could have inflicted the death penalty. Taking the defendant's own story as told upon the witness stand and placing the best possible interpretation upon it, the least the jury could have done was find the defendant guilty of manslaughter, which they did in this case. It is evident from the verdict of the jury that, if any prejudice was created in the trial of the case, it was in favor of the defendant and not against him. Considering the punishment fixed by the jury, the defendant is in no position to complain of the conduct of the trial.

The defendant assigns numerous other errors which are not argued in his brief and are without merit.

For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.