RAY CADWELL v. STATE.

No. A-8372. July 22, 1932.
(13 Pac. [2d] 214.)

C. B. Leedy, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter referred to as defendant, was convicted in the district court of Ellis county of the crime of stealing two hogs, the property of one C. M. Metz, and his punishment fixed by the jury at imprisonment in the state penitentiary for a term of three years.

But two questions are involved in this appeal:

First, the sufficiency of the evidence to support the verdict of the jury;

Second, whether the trial court erred in admitting certain alleged incompetent evidence.

The evidence of the state was that C. M. Metz was the owner of two red and black female pigs weighing about 50 or 60 pounds each; that Metz lived in sight of and about 200 yards from the house of defendant; that Metz's pigs ran with the hogs of defendant's father; that on the 4th of April, 1931, Metz went to Fargo to buy his auto license; that on the same day defendant caught two spotted pigs answering the description of Metz's pigs, put them in sacks, and put them in an automobile belonging to William Habekott and hauled them to the home of one Dobbs, the father-in-law of defendant, south of the South Canadian river, in Beckham county; that the pigs

were kept that night in a barn and hauled the next day, which was Sunday, to Elk City, where defendant disposed of them to one Shepherd as part payment for a mattress; that these pigs were taken out to Shepherd's farm a mile from Elk City and kept for about a month in charge of Mr. Fink; that the officers, learning of the larceny of the pigs and of the sale to Shepherd by defendant, attempted to locate the pigs, but on going to Shepherd's farm learned from Fink that a man representing himself as Mr. Jones had come to the place at about 4 o'clock in the morning of that day and taken the pigs away. Other witnesses testified that the supposed "Mr. Jones" was Guy Cadwell, a brother of defendant, and that Guy Cadwell took these pigs several miles from Shepherd's place in a car and killed them and threw them out at the side of the road.

Defendant admitted that he took the pigs and sold them to Shepherd at the time and place alleged in the complaint, but sought to show that they belonged to defendant's father and were taken and sold with his permission.

There is considerable discrepancy between the testimony of defendant and his father on this particular point. This is what defendant said about it:

"Q. At that time do you know of your father advising you to sell any of his hogs or authorizing you to do it? A. He did. Q. All right, tell the jury what he did. A. He told me to take the hogs down and sell them and bring him the money back, he had to have it. Q. What did the hogs bring? A. I believe it was $10."

This is what the father said about it:

"Q. Did you authorize anyone to sell any of your hogs in April, 1931? A. I let my boy have a couple of mine. I guess he sold them. I wasn't there when he left with them. Q. Do you know where he sold them? A. I

think he sold them to Elk. Q. How many did he sell? A. Two, he said. That was what I let him have. Q. What kind of hogs were they? A. They were red with black spots."

Defendant, in substance, said he was selling the hogs for his father, because he had to have money. The father in substance said that he guessed the boy sold them.

Shepherd, the buyer, testified that he bought two shoats from defendant on Easter Sunday; that defendant owed him and he took them in on a mattress.

The evidence of the state and the admissions and attempted explanations of defendant constitute sufficient evidence to support the verdict of the jury.

Defendant's second contention is that the court committed reversible error in admitting incompetent and prejudicial evidence.

It appears from the record that the sheriff and Metz, having information that defendant accompanied by William Habekott had sold pigs similar to the ones stolen from Metz, to Shepherd, had interviewed Habekott and were preparing to go to Shepherd's to see if the pigs sold by defendant were the ones taken from Metz; that Frank Donnell, Guy Cadwell, who was jointly charged with defendant, and Clyde Cadwell, with Virgil Habekott, a brother of William Habekott, went to the home of Jack Brown looking for defendant; that Donnell wanted Guy Cadwell to go with him to the home of one Dobbs, who was the father-in-law of defendant, and see defendant, who had his saddle; that on reaching Dobbs' place at about 10 o'clock at night, Guy Cadwell went in the house and left the others outside; that later they all went in the house; that while in the house Guy Cadwell went upstairs: that they left in a two-seated car and went toward Elk

City; that the car stopped about three miles from Elk City and all got out except Guy Cadwell, who went away and was gone until about 4 o'clock in the morning; that when he returned he had two hogs in the back of the car; that Guy killed the hogs with a hammer and threw them out by the side of the road.

In Cover v. Commonwealth (Pa.) 8 A. 196, that court held: Evidence of criminal acts committed by the defendant, intended to thwart and prevent a conviction of the particular crime charged upon which he is being tried, is admissible upon trial under such indictment. To the same effect are Williams v. State, 15 Tex. App. 104; People v. Place, 157 N. Y. 584, 52 N. E. 576; Roberson v. State, 40 Fla. 509, 24 So. 474.

In a case of larceny of live stock, evidence of the destruction of the stolen animals to prevent their discovery and introduction in evidence is always relevant, but where such destruction is done by a brother of defendant, or by others, in order to make such evidence admissible against defendant, the state must show that the brother of defendant, or other parties acting, were acting for defendant and by his direction and authority. Cecil v. Territory, 16 Okla. 197, 82 Pac. 654, 8 Ann Cas. 457.

If the state had proved directly that defendant went to Elk City, got these pigs from Fink, and killed them and threw their carcasses away, there would be no question about the admissibility of the evidence under the rule above stated; or, if the state had shown by its evidence that the defendant aided and abetted his brother, Guy Cadwell, to do it, he would be guilty as a principal, and the evidence would likewise be admissible.

The difficulty about this question is that the state's evidence merely creates a suspicion that defendant aided

and abetted in the destruction of the pigs, and does not rise to that degree of proof required by the rule above stated. It was error, therefore, for the trial court to admit such evidence.

When an error has been committed upon the trial of a case, it is the duty of the court, upon an inspection of the entire record, to determine whether or not defendant suffered any material injury from such error. Unless such injury appears, the error will not be ground for reversal. Offitt v. State, 5 Okla. Cr. 48, 113 Pac. 554; Coleman v. State, 6 Okla. Cr. 253, 118 Pac. 594; Swartz v. State, 6 Okla. Cr. 590, 120 Pac. 1029; Hooper v. State, 7 Okla. Cr. 43, 121 Pac. 1087; Knox v. State, 34 Okla. Cr. 300, 246 Pac. 665; Ray v. State, 35 Okla. Cr. 322, 250 Pac. 438.

In Crowell v. State, 42 Okla. Cr. 392, 276 Pac. 518, this court said:

"Where the guilt of the defendant is clearly and conclusively established and there is no good reason to believe that upon a second trial an intelligent and honest jury could, or would, with reason and propriety arrive at any other verdict than that of guilt, a new trial will not be granted except for fundamental error."

In the case at bar, the evidence of the state with the admissions of the defendant establish the guilt of defendant beyond a reasonable doubt.

The jury fixed defendant's punishment at imprisonment for three years in the penitentiary. The statute under which he was prosecuted fixes the minimum punishment at two years' imprisonment.

Because the admission of this erroneous testimony might have influenced the jury in fixing the punishment at three years, the judgment is modified and the punish-

8

ment reduced to imprisonment in the state penitentiary for two years, and, as modified, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent.