## JOE ZEWALK v. STATE.

No. A-9885.  Nov. 26, 1941.

(119 P. 2d 874.)

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and George R. Inglish, Co. Atty., of Okmulgee, for the State.

L. A. Wallace, of Okmulgee, for defendant.

BAREFOOT, P. J. Defendant, Joe Zewalk, was charged in the superior court of Okmulgee county with the crime of larceny of domestic animals, to wit, one Holstein heifer and one Guernsey heifer; was tried, convicted and sentenced to serve three years in the penitentiary, and has appealed.

The errors assigned for reversal of this case are:

"I. The trial court erred in permitting the state to introduce evidence concerning the commission of a crime other than the one with which the defendant stood charged.

"II. The trial court erred in refusing the defendant's offer to prove certain contradictory statements made by the state's witness, Jack Morris.

"III. Because of misconduct of the assistant county attorney in the trial of the case, which prevented the defendant from having a fair and impartial trial.

"IV. Because the trial court erred in overruling the defendant's motion for new trial."

For a proper consideration of these errors a statement of the facts is necessary. Defendant was charged jointly with Roy Johnson and Jack Morris with the larceny of the above-described property in Okmulgee county from Clarence Idsardi on the 20th day of August, 1939. The evidence of the state, as shown by the record, revealed that the two cattle above described, which were each branded "C. I.", were stolen from near the premises of the prosecuting witness on Sunday night, August 20, 1939.

Jack Morris, a witness for the state, testified that he lived two and one-half miles south of Okmulgee; that on the night of Thursday, August 17, 1939, the defendant, Joe Zewalk, Clyde Nero and Sam Lovett, came to his home in Lovett's car; that he had known Clyde Nero for some time; that a deal was made whereby he was to haul some cattle to Muskogee and that he was to meet the defendant, Joe Zewalk, and Sam Lovett in the bottom out by the river bridge on the Lake Okmulgee road the next night, which would be Friday night, August 18, 1939; that in pursuance of this agreement he met the above parties, and they brought with them Roy Johnson. They introduced him to Roy Johnson and told him to wait until they went and got some cattle. He waited for about three hours. They did not return, and he saw an automobile drive off into the bottom and he got scared, dropped his car keys and ran. He left his truck and did not return to get the same until the next morning (Saturday). On Saturday morning, while in his truck with his wife, he met the defendant in Okmulgee and made arrangements with him to go back to the bottom the following night, which would be Sunday night, August 20,

1939, for the purpose of getting the cattle. On that night he met the defendant and Roy Johnson, and they directed him down to the bottom. They loaded the cattle, which were identified as being the cattle of the prosecuting witness, Clarence Idsardi, and that he and defendant took the cattle in the truck to Muskogee, where they were sold to the Central Packing Company. That he received a check for the cattle and cashed the same and gave the defendant $20 or $25. That he and defendant returned in his truck to Okmulgee on Monday morning between 9:00 and 9:30 o'clock, and the defendant got out of his truck in front of the Brunswick Pool Hall on East 6th street, and his wife was across the street and saw defendant get out of the truck, and she and her husband drove away. This witness also testified that he had stolen cattle on numerous other occasions; that he had been convicted of stealing cattle and receiving stolen property; that he had cases pending against him at this time; that the county attorney had agreed to recommend a sentence of ten years for him in the penitentiary in the cases which he had, and that he expected this agreement to be carried out.

Sam Lovett also testified for the state and corroborated the evidence of witness Morris as to coming to his home with defendant and Clyde Nero on the night of the 17th of August, 1939, and of arrangements to meet in the bottom near the river bridge west of Okmulgee. That he was present on Friday night and assisted in getting the cattle and went to the place where the truck was parked, but that Morris was gone. That he did not see the witness Morris until Saturday morning and saw him talking to the defendant, but did not hear the conversation.

Mrs. Jack Morris also testified corroborating her

husband's statements as to the parties coming to their home on Thursday night, August 17, 1939. She could not identify the parties, but saw them there. She also testified to being present when the defendant and her husband returned from Muskogee to Okmulgee at about 9:30 a. m. on Monday, August 21st, and that she saw the defendant get out of the truck in front of the Brunswick Pool Hall.

Defendant presented several witnesses and himself to prove an alibi, that he was at his home on Sunday evening and at night and did not leave there. That he did not go to Muskogee as testified to by the witness Morris. That he did not participate in the stealing of the cattle. Defendant also produced witnesses who testified to his previous good character and reputation.

Defendant's first assignment of error is based upon the admission in evidence of the attempted larceny of the cattle on Friday night, August 18, 1939. This was the evidence of the witness Sam Lovett, it being contended that this was an attempt to prove larceny of different property than that alleged in the information. We do not think that this evidence was inadmissible. It was within a short time of the larceny alleged, and the evidence is such that it showed not only a conspiracy, but also was so related as to be part of the res gestae. The only reason that the cattle were not stolen on the Friday night was because the witness Morris got scared and ran away. He returned on Sunday night in pursuance of the agreement with defendant, and the evidence is such that would have warranted the jury in finding that the same cattle were stolen on Sunday night which it was intended to steal on Friday night. It is true that the witness Idsardi testified that he thought his cattle left

his pasture about noon Sunday, August 20th, and he was not sure when they left.

The second assignment of error is based upon the fact that the witness Jack Morris had testified in the preliminary hearing that when he returned from Muskogee to Okmulgee on Monday morning, August 21, 1939, with the defendant, he did not remember whether his wife saw the defendant at the time that he got out of the truck in front of the Brunswick Pool Hall. On the trial of the case he testified that she walked out to the truck, saw the defendant get out of the truck, and that she saw the defendant. He stated that he had refreshed his memory since the preliminary hearing and remembered she saw him when he got out of the truck. While it occurs to us that the evidence of the witness at the preliminary would be competent for the purpose of impeachment of the witness, we do not think it was such error as should cause a reversal of this case under all the facts and circumstances. The witness was not confronted with this testimony at the time he was on the witness stand, but counsel for defendant presented the court reporter, who testified that defendant testified at the preliminary as above outlined. The court refused to admit this evidence. We do not think this was such error as to cause a reversal of this case. The question as to whether they arrived at Okmulgee from Muskogee on Monday morning, August 21, 1939, at 9:30 or 10:30, was immaterial. This was a proper question for the consideration of the jury. While we think the court should have permitted the evidence of the testimony given by the witness Morris at the preliminary examination, it was not such error as would cause a reversal of this case when one takes into consideration the record as a whole. Oklahoma Statutes 1931, section 3206, O. S. A. title 22, § 1068; Knox v.

State, 34 Okla. Cr. 300, 246 P. 665; Ray v. State, 35 Okla. Cr. 322, 250 P. 438; Offitt v. State, 5 Okla. Cr. 48, 113 P. 554; Hooper v. State, 7 Okla. Cr. 43, 121 P. 1087; Crowell v. State, 42 Okla. Cr. 392, 276 P. 518; Cadwell v. State, 54 Okla. Cr. 2, 13 P. 2d 214.

The next contention of defendant is based upon the misconduct of the assistant county attorney. This is based upon certain questions asked the defendant on cross-examination with reference to the testimony of a certain witness in a preliminary examination of the defendant in a case other than the one on trial. An objection was sustained to the question by the court and the witness did not answer the same. It was incompetent, but we do not think it was such as would have changed the verdict reached in this case.

For the reasons above stated, the judgment and sentence of the superior court of Okmulgee county is affirmed.

JONES and DOYLE, JJ., concur.