Lonnel Leonard **FRANKS**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–18084.

Court of Criminal Appeals of Oklahoma.

Sept. 5, 1973.

Herbert E. Elias, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen.; for appellee.

## OPINION AND DECISION

BRETT, Judge:

Appellant, Lonnel Leonard Franks, was convicted in the District Court of Okmulgee County, Oklahoma, case number CRF–72–102, for the offense of larceny of domestic animal; he was sentenced to serve ten (10) years imprisonment; and from that conviction this appeal has been perfected.

The state's proof showed that on the night of July 30, 1972, defendant Clifford Jefferson, and Carlton Tharpe went to the Mills Ranch in the vicinity of Beggs, Oklahoma, for the purpose of rounding up some calves. While defendant and Clifford Jefferson rounded up the seven calves in question, Tharpe drove the Corvair automobile, that defendant frequently used, around the vicinity for about forty-five minutes. The calves were placed in a chute and about 4:30 a. m. defendant and the same two men returned to the chute area and loaded the seven calves on a pickup truck. After the calves were loaded on the pickup, Jefferson and Tharpe drove the pickup with the calves to the Tulsa Stock-yards located in the vicinity of Sand Springs, Oklahoma. Jefferson checked the calves in the stockyard with the American Livestock Association in the name of James R. Williamson, as instructed by defendant. The two men then returned to Beggs, Oklahoma, where they lived. Jefferson testified defendant was to pay him Fifty Dollars ($50.00) for helping defendant sell the calves.

About 9:30 a. m. the morning of July 31, 1972, defendant and Jefferson returned to the stockyards in the white Corvair automobile, so that Jefferson could pick up the check for the calves. Jefferson inquired about the check twice but each time he was informed that it was not prepared; but the second time Jefferson inquired, he said: "[T]he lady told me to go check and see if Charles or Charlie had the stubs so we could pick up the check because it wasn't ready, so I went out there and I didn't [see] Charles. I asked about him and they said he was down in the chute, so then I saw this other officer, he was talking to this old man." The officer Jefferson referred to was Paul Wade, an inspector for the Cattleman's Association. Jefferson informed defendant about seeing Inspector Wade, but defendant told him, "pay it no mind." A few minutes later Jefferson was arrested and defendant left the stockyards in the Corvair.

Defendant and Jefferson were both observed at the stockyards by Inspector Wade; and Jefferson was arrested at the stockyards by Inspector Raymond Russell. Inspector Wade also testified that he observed defendant at the stockyards in the Corvair automobile. Defendant was later arrested by Deputy Sheriff Gene Rice and Inspector Wade in Beggs, Oklahoma, at the home of Mrs. Shirley McCargo, when defendant's constitutional rights were explained to him. Inspector Wade testified that defendant said to him that he had not been to Tulsa, that he didn't own any cattle and never had owned any cattle, and that he was in Okmulgee, Oklahoma on that morning.

The owner of the calves, Mr. Ray Mills, testified that he had not given permission for anyone to sell his calves. In addition to the testimony introduced, concerning the check being made payable to James R. Williamson, several other checks were introduced and properly identified from the Oklahoma Livestock Commission which had been made payable to James R. Williamson; and it was shown that the endorsement on each such check was written by defendant. This comparison of signatures was made with a copy of a "London Letter" executed by defendant, while he was in jail. The comparison was made by Mr. Ernest Smith, a "question document examiner" with the Oklahoma Bureau. of Investigation. Clifford Jefferson had testified that defendant told him to check the calves into the American Livestock Commission, because defendant had used the Oklahoma Livestock Commission "too many times." One of defendant's complaints concerned the introduction of the Oklahoma Livestock Commission checks into evidence. Carlton Tharpe's testimony was similar to that given by Jefferson, so far as his part in the theft was concerned.

Defendant did not testify in his own behalf, but introduced the testimony of eight other witnesses in an effort to prove that he was not involved in the theft of the calves. Three of his witnesses testified that defendant had gone with them to Sapulpa, Oklahoma, the night of July 30; and that they did not return to Beggs until after one a. m. Shirley McCargo testified that defendant was with her when they went to Sapulpa; and that he stayed with her the remainder of the night, upon their return to Beggs, until early the next morning when defendant's mother picked defendant up. She testified that defendant returned to her home about 9 a. m., and they remained in bed together until about 1 p. m., when they went to Okmulgee, Oklahoma; and that they returned to her home about 4 p. m. and that they were in the bedroom together when the deputy sheriff arrived about five o'clock.

Defendant's mother testified that she picked defendant up at Shirley McCargo's house early the morning of July 31, so he could help her load several head of cattle, after which she returned defendant to Shirley McCargo's house about nine o'clock that morning. Another witness testified that he saw defendant's mother pick him up at the McCargo residence, while another witness testified that he saw defendant when defendant was picked up and returned to Shirley McCargo's house. The cross-examination of defendant's mother is the basis of one of defendant's complaints, when the prosecutor inquired concerning her being on welfare, and her ownership of cattle.

Defendant's demurrer to the state's evidence was overruled at the conclusion of the state's evidence; and at the conclusion of all testimony, defendant renewed his demurrer and moved for a dismissal of the information, both of which were denied. Thereafter the jury was instructed, oral argument had, and the jury returned its verdict finding defendant guilty and assessed his punishment at ten years confinement in the penitentiary.

Defendant's first proposition asserts that the trial court allowed irrelevant, extraneous and highly prejudicial evidence to be admitted over defendant's objections at his trial. In particular defendant is referring to the several checks issued by the Oklahoma Livestock Association, payable to James R. Williamson, when defendant assertedly sold other cattle. Those checks were also identified as having been endorsed by defendant. To support this proposition, defendant relies on Zewalk v. State, 73 Okl.Cr. 202, 119 P.2d 874 (1941); but as we read that case, Zewalk's situation was analogous to the instant case. In *Zewalk, supra*, evidence of the first attempt to commit larceny of cattle was approved by this Court and that decision recites: "It [the attempted larceny] was within a short time of the larceny alleged, and the evidence is such that it showed not

only a conspiracy, but also was so related as to be part of the res gestae." Notwithstanding the fact that no conspiracy is charged herein, we believe the instant case is sufficiently analogous to the *Zewalk* case, as to consider the other checks paid to defendant by the Oklahoma Livestock Association, in the name of James R. Williamson, to be so related to the sale of cattle in the instant case as to be part of the res gestae. Jefferson testified that on at least two other occasions he picked up checks at the stockyards for defendant; and that those checks were made payable to James R. Williamson. Consequently, the method of payment at least tends to show the scheme defendant used in order to sell cattle delivered to the stockyards. Whether or not those cattle were stolen is not shown, but according to the testimony offered defendant did receive payment as the State alleged.

In Jones v. State, Okl.Cr., 321 P.2d 432, 442 (1958), this Court approved the introduction of evidence concerning other purchases of paregoric, as being part of the res gestae; and cited the exceptions to the general rule which prohibits the introduction of evidence of other crimes, as found in State v. Rule, 1914, 11 Okl.Cr. 237, 144 P. 807; Michelin v. State, 66 Okl.Cr. 241, 90 P.2d 1081; and Roulston v. State, Okl. Cr., 307 P.2d 861.

■ The second part of defendant's first proposition asserts that certain testimony of Inspector Paul Wade was improper and incompetent. The prosecutor asked under what circumstances Inspector Wade was at the stockyards when he observed defendant. Inspector Wade answered, "We had been working in this area quite some time. This is my district. My primary work is cattle theft." Defendant complains that the answer prejudiced defendant's case. The witness was entitled to state what his duties were with reference to the stockyards and its business.

■ Other instances of improper testimony referred to by defendant concerned the testimony of Clifford Jefferson, when he was asked, "And what were you supposed to get if you went along and helped him [defendant]." This was a proper question put to the witness, because he had already testified that he assisted defendant round up, load and deliver the cattle to the stockyards for sale.

■ The last complaint listed under the first proposition asserts that the State improperly cross-examined certain of defendant's witnesses. While the question put to defendant's mother, with reference to her, or her husband being on welfare, was premised upon her answer that the cattle that defendant helped her load, belonged to her, the persistent questioning of the witness on the welfare subject was improper. It was the prosecutor's theory that she should not own the cattle if she was drawing public welfare funds. There can be no doubt but that the intention of this line of questioning was to impeach the testimony of defendant's mother. Whether or not defendant's mother was drawing public assistance was not an issue in this trial; and such questions were improper. See Combs v. State, 87 Okl.Cr. 283, 197 P.2d 524 (1948). This objection is not sufficient to cause a reversal of this conviction.

■ Defendant's second proposition contends that the demurrer to the State's evidence should have been sustained. Defendant asserts that the testimony of defendant's accomplices was not sufficiently corroborated. As we view the evidence submitted to the jury, the testimony of Clifford Jefferson was sufficiently corroborated. Jefferson was observed at the stockyards by Inspector Wade when they arrived to pick up the check; he also wrote down the license tag number of the white Corvair automobile in which Jefferson and defendant arrived; and the Oklahoma Livestock Commission checks were shown to have been endorsed by defendant. Jefferson had testified that he picked up at least two other "James R. Williamson" checks for defendant at that commission. It may be that Jefferson's and Tharpe's testimony was not corroborated in every

detail, but that is not the requirement of the law. This Court stated in Nation v. State, Okl.Cr., 478 P.2d 974 (1970):

"It is the law in this state that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all."

In the instant case we conclude that the accomplice's testimony was sufficiently corroborated.

 Defendant's third proposition contends that the prosecutor's closing argument was intended to arouse the passion and prejudice of the jury, thereby denying defendant a fair trial. We have reviewed the prosecutor's closing argument and find that his argument was not an unreasonable inference of the testimony and evidence offered. "The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's right that a reversal can be based on improper argument." Bell v. State, Okl.Cr., 381 P.2d 167, 174 (1963).

 Defendant's last proposition contends that the punishment is excessive. Notwithstanding that defendant was assessed the maximum sentence authorized by the statutes, under the circumstances the jury was within its rights to assess such punishment. We are, therefore, of the opinion the sentence imposed was not excessive; and insofar as defendant received a fair trial, that the judgment and sentence imposed herein should be affirmed.

BLISS, P. J., and BUSSEY, J., concur.