## E. D. HERNDON v. STATE.

No. A-5915. Opinion Filed Nov. 26, 1927.
(261 Pac. 378.)

See, also, 30 Okla. Cr. 162, 234 P. 1116.

Sigler & Jackson, for plaintiff in error.

George F. Short, Atty. Gen., and Leverett Edwards, Asst. Atty. Gen., for the State.

DOYLE, P. J. The appellant, E. D. Herndon, was convicted of manslaughter in the second degree and his punishment fixed at confinement in the penitentiary for a term of four years.

The information, omitting formal parts, charges that in Carter county, March 1, 1925, "the above named defendant, E. D. (Doty) Herndon, did, then and there willfully, unlawfully and feloniously with a premeditated design to effect the death of Billie Bright, and by acts imminently dangerous to others and evincing a depraved mind, regardless of human life, operate, drive,

and propel an automobile against, upon, and over the person and body of the said Billie Bright with such force as to throw, hurl and force the said Billie Bright upon and against the street and pavement of the city of Ardmore, Oklahoma, then and there and thereby inflicting upon the head and body of the said Billie Bright certain mortal wounds of which the said Billie Bright then and there immediately did die; that the said E. D. (Doty) Herndon, in manner and form as aforesaid unlawfully and feloniously did, then and there kill and murder the said Billie Bright contrary to," etc.

The main, if not the only, question on this appeal is whether the evidence was sufficient to sustain the verdict.

It is obvious that appellant was convicted of the crime defined in the Penal Code as follows:

"Any killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree." Section 1745, C. S. 1921.

It appears that Douglas boulevard, in the city of Ardmore, is an avenue running north and south, with a parkway in the middle with driveways on each side about 18 feet wide. The home of Ernest Bright is situated on the east side of this street, facing west, and across the boulevard is the home of J. W. Skipworth. On the day of the tragedy which resulted in this prosecution, Billie Bright, age four years, was playing near the Skipworth home. Mrs. Bright, his mother, called to him from her front porch, and the child started to cross the street, when appellant came driving down Douglas boulevard at a speed, as testified to by the witnesses for the state, of between 25 and 35 miles an hour. The automobile driven by appellant struck the child, killing

him almost instantly. Appellant did not stop, but drove on.

Mrs. Ernest Bright testified that she was standing on her front porch; that when struck by appellant's car her child was not more than a foot from the curbing.

The evidence tends to show that before the accident a Ford car had been parked in the street in front of the Skipworth home. All the witnesses for the state testified that this delivery truck had been gone from three to ten minutes and was not even in sight at the time the accident occurred.

C. J. Baker, the driver, testified that he was a florist and had driven to the Skipworth home, and as he was leaving a child followed him out to his truck, and as he left the child went back towards the sidewalk; that he did not hear of the accident until late that afternoon. According to the testimony of appellant he was going up the street at a moderate rate of speed, 18 or 20 miles; a Ford car with a cab on the back of it was parked there, headed north; that the child ran from behind the truck and he whirled to the right to miss him, and the left front wheel struck him; that he stopped and then drove off. He further testified:

"It scared me, and the women screaming scared me; I knew Mr. Short lived there close, and if it was one of his children I wouldn't live long enough to tell how it happened."

It was the theory of the state that the death of Billie Bright occurred as a result of the gross and culpable negligence of the defendant, Herndon, in operating the automobile which killed the child.

The theory of the defense was that the defendant was using due care in driving the car, but that the child darted out from the curb and from behind a delivery truck and thus the accident was unavoidable. His testi-

mony that the child darted out from behind the florist truck is not supported by other evidence. The physical facts of the accident are entirely inconsistent with his statement. The testimony shows that when hit by the car the child was not more than a foot or two from the curb.

The evidence for the state shows that appellant at the time of the accident was driving an automobile on the streets of Ardmore at a rate of speed exceeding the limit fixed by a city ordinance, and his failure to stop after the accident tends to show a reckless disregard of consequences.

"Culpable negligence" may be defined as the omission to do something which a reasonable and prudent man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case. If the death of the child was caused by culpable negligence, then it was not intentional.

The law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act and treats him as guilty of a willful and intentional wrong. People v. Vasquez (Cal. App.) 259 P. 1005, and cases cited.

Where a person intentionally does an unlawful act, such as driving an automobile at a reckless rate of speed, and, without regard for the life and limb of others, runs into and kills another person, the rule seems to be that his conduct imputes to him the intention to do what in effect he does do, and, under such circumstances, the courts hold such person guilty of manslaughter. Mayse v. State, 38 Okla. Cr. 144, 259 P. 277.

It is obvious that the instant case was one for the consideration and determination of the jury.

The instructions given by the court fully covered the law of the case.

The trial was in all respects fair, and we are unable after a careful examination to find anything in the record sufficient to create a doubt as to the correctness of the result, or to warrant us interfering with the verdict.

The judgment is therefore affirmed.

EDWARDS and DAVENPORT, JJ., concur.