## PHIL PHILBY v. STATE.

No. A-9287.  Feb. 11, 1938.

(76 P. 2d 412.)

2

Billingsley & Kennerly, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case in substance charged that in Seminole county on the 6th day of November, 1935, Phil Philby did willfully, unlawfully, and feloniously, and with the premeditated design to effect the death of one Gerald Glen Lawrence, drive a Ford V-8 automobile into and over the body of the said Gerald Glen Lawrence, thereby inflicting certain mortal wounds, from which wounds the said Gerald Glen Lawrence did then and there die.

To the information a plea of not guilty was entered. Upon his trial the jury returned a verdict finding defendant guilty of manslaughter in the second degree, and fixing his punishment at confinement for six months in the county jail. A motion for new trial was made and overruled.

From the judgment rendered in conformity with the verdict on October 5, 1936, he appeals.

The proof shows that the hit and run accident resulting in the death of Gerald Glen Lawrence, occurred 11 miles

south of Seminole, on Highway 48, at which point there is a grocery and filling station, facing east 40 feet from said highway. It appears that defendant driving a Ford V-8, going south, was passing a wagon pulling a hay bailer, when the car struck the boy.

The proprietor, Mr. Lewis, testified that Leroy Puckett, Tom Woods, and Troy Bounds were in the wagon pulling a hay bailer, it was a rainy misty day, and the pavement was wet; that the car that hit the boy was going 45 or 50 miles an hour; that the boy clung to the front of the car for some distance; looked like the wheels caught his arm and pulled him under, then threw him out; that the boy made no move, and died there on the shoulder of the highway. It seemed the car checked its speed to around 30 or 35 miles an hour, but did not stop. Others came along, quite a few stopped, and he left to call an undertaker. Later the automobile was brought back to the store and some of the pieces on the car were gone; that he saw pieces he had picked up fitted in; that this happened in Seminole county.

Leroy Puckett testified that he was 15 years old; that he and Gerald Glen Lawrence were walking to Lewis's store and caught a ride with Doxie Woods, driving a wagon with a hay bailer behind. Arriving at Lewis's store the wagon stopped and they got off at the rear end, and ran across the pavement, and the car hit Gerald. The car was going pretty fast and did not stop. That Gerald was eight years old and small for his age.

Tom Woods testified that he was riding in the wagon and the other boy was driving the hay bailer; the boys were in the spring seat with him, when he drove off the pavement and stopped. At that time the wagon was straight east, across the road from the store. When the Puckett boy ran across the pavement he noticed a car coming from the north; the driver of the car was sounding the horn. That to him it looked like the car was going 45 miles an hour;

the little boy Gerald was just behind the wagon. That he was watching the boy and not the car when it hit him. He saw the boy roll under the car as it slowed down, and then went on. The car did not stop.

Bat Ingram, deputy sheriff, testified that he received the report of a child being killed and went to the scene of the killing and picked up pieces of an automobile, got back to Konawa and learned that they had the boys at Ada, and went on to Ada; saw the defendant and his brother sitting in a car in front of the courthouse in custody of the officers; talked to defendant and later brought him back to Wewoka; that he could smell intoxicating liquor on his breath when he talked to him in Ada. Defendant denied that he had driven on that road, and he said he came around from Wewoka and Sasakwa, and said he was not implicated in any way.

Alvis Jones, deputy sheriff at Ada, testified he got the pick-up order around 2 o'clock and with Mr. Shokley went north on Highway 48; they passed the defendant's car about three miles north of Ada on Highway 48, then turned back and pursued the car; the car kept going at such a high rate of speed that when they tried to turn west it went over the shoulder.

Phil Philby was driving and his brother was in the car. We questioned him about running over and killing the child; and he said he was not implicated at all, that he could smell intoxicating liquor about the defendant.

J. A. Doyle, sheriff of Seminole county, testified that he went to the scene of the killing and found a blood spot on the ground about 100 yards down the road from the Lewis store.

Tom Lewis, recalled, testified there was a clear view north up Highway 48 for a quarter of a mile from his store, and that a vehicle such as a wagon and hay bailer could have been seen that far.

When the state rested, the defendant demurred to the evidence on the ground that the same is insufficient to warrant a conviction of any offense defined by the statute. The demurrer was overruled. Exception.

On the part of the defense, Mrs. J. F. Daniels testified that she ran the Deaborn Hotel at Seminole, and Phil Philby, defendant, had been rooming at her hotel for two years; that on November 6th he checked out around 12:30, was going to Ada to see his sister; his brother left with him; their car was parked out in front of the hotel; that she talked to defendant immediately before he left and he was sober; had never seen the defendant when she thought he was drinking; that his general reputation was good.

The defendant called several witnesses to show his general reputation as a peaceable, quiet, and law-abiding citizen was good.

The state put in no evidence to rebut that of the defendant as to his previous good character.

The defendant did not testify as a witness.

Counsel in their brief say:

"We contend that the court erred in giving an instruction on second degree manslaughter in this case. That the information is insufficient to charge the crime of murder, 'as the instrument of death' was an automobile, and the information does not charge that the automobile was used or managed in such a manner as to constitute it a dangerous instrument.

"All the evidence of the state tended to show that the defendant was under the influence of intoxicating liquor at the time, that he failed to stop after striking the deceased with his automobile."

It is urged that since the court instructed on murder and both degrees of manslaughter and the verdict is for second degree manslaughter, the jury did not believe the evidence tending to prove murder or manslaughter in the

first degree, and the verdict of second degree manslaughter is not sustained by the evidence.

In the case of Walters v. State, 57 Okla. Cr. 424, 48 P. 2d 875, this court held:

"Where information charged murder, and jury found accused guilty of manslaughter in second degree, appellate court will not grant new trial on ground accused should have been convicted either of murder or manslaughter in first degree, or acquitted."

The opinion of the court was by Edwards, J. We quote from the opinion:

"Murder is defined by section 2216, Okla. Stat. 1931 [21 Okla. St. Ann. § 701]. Manslaughter in the first degree is defined by section 2223, Okla. Stat. 1931 [21 Okla. St. Ann. § 711]. Manslaughter in the second degree is any unlawful killing not included in the definition of murder and of manslaughter in the first degree. It is not defined in specific terms, but by the catchall definition of section 2228, Okla. Stat. 1931 [21 Okla. St. Ann. § 716], which is:

" 'Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree.'

"There are three degrees of unlawful homicide; murder and the two degrees of manslaughter. Section 3096 [22 Okla. St. Ann. § 915], is:

" '3096. Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty.'

"This section has been many times construed and applied by this court, and it is settled law the jury must fix the degree of the crime of which a defendant is convicted when the court submits to them the different degrees. The verdict will not be disturbed on the ground the jury found defendant guilty of a lower degree of the crime charged than that established by the evidence. It sometimes happens the jury, in arriving at a verdict, does so by a compromise and fixes a lower degree than the undisputed

evidence may disclose. Some states have reversed convictions under such circumstances, but, with two exceptions, this court has held the error is in favor of the accused and is not ground for a new trial. The exceptions are: Leseney v. State, 13 Okla. Cr. 247, 163 P. 956, and Lovejoy v. State, 18 Okla. Cr. 335, 194 P. 1087. These cases have been criticized and have not been followed. Irby v. State, 18 Okla. Cr. 571, 197 P. 526; Taylor v. State, 44 Okla. Cr. 58, 278 P. 1117. We are satisfied the law on this point is correctly stated in the following cases: Lytton v. State, 12 Okla. Cr. 204, 153 P. 620; Lazenby v. State, 18 Okla. Cr. 83, 192 P. 1103; Smith v. State, 20 Okla. Cr. 301, 202 P. 519; Wilmoth v. State, 20 Okla. Cr. 453, 203 P. 1055, 21 A.L.R. 590; Inman v. State, 22 Okla. Cr. 161, 210 P. 742; Taylor v. State, supra; Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285."

"Culpable negligence" is not defined by our statute. In Kent v. State, 8 Okla. Cr. 188, 126 P. 1040, 1043, it is defined as:

"The want of that usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions."

The term is also defined in Nail v. State, 33 Okla. Cr. 100, 242 P. 270, as follows:

" 'Culpable negligence' is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case."

In the opinion it is said:

"By no means every instance where one person is injured or killed by a vehicle driven by another do the circumstances constitute a crime. There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of deceased? If so, it establishes a case of criminal negligence. * * *

"The highways of the state are common property of all, and by whatever method or conveyance they are used for travel, persons upon the highways have equal rights. In exercising these rights, each must have regard for the rights of others. The law gives the right to use the highways for travel by automobile, but this right is limited to doing so in a legal and prudent manner, and when a person drives upon the highway in the exercise of such right in a negligent manner, so that his negligence affects others likewise lawfully upon the highway to their injury, he becomes liable to the injured party, and, if the degree of negligence with which the act is done is culpable within the meaning of the law, he becomes liable to the state for criminal negligence."

Accidental death to be wholly excusable must have resulted from the doing of some lawful act. Johnson v. State, 59 Okla. Cr. 283, 58 P. 2d 156.

13 Ruling Case Law, p. 863, § 166, reads in part as follows:

"Whether in any particular case the homicidal act was the result of accident must be gathered from all the facts and circumstances surrounding the transaction, and it is peculiarly within the province of the jury to determine this, according to the well settled rules of law."

It appears from the record that the sufficiency of the information was in no way challenged in the court below. The prosecution was based upon the third subdivision of section 2216 of the Penal Code, 21 Okla. St. Ann. § 701, subd. 3, providing that homicide is murder "when perpetrated without any design to effect death by a person engaged in the commission of any felony."

The evidence showing, or tending to show, that when the fatal accident occurred the defendant was driving a motor vehicle on a public highway while under the influence of intoxicating liquor, was uncontroverted.

Section 10324, 47 Okla. St. Ann. § 93, makes it unlawful for any person who is under the influence of intoxicating

liquor to drive a motor vehicle on any highway within the state, and that any person violating the provisions of this section shall be deemed guilty of a felony, and shall be punished by imprisonment in the penitentiary not more than one year, or by a fine of not more than $2,000, or by both imprisonment and fine.

Section 2223, 21 Okla. St. Ann. § 711, provides:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor."

It is undisputed that the defendant driving the car in a reckless manner failed to stop and give information after the car struck the little boy, as required by section 10329, 47 Okla. St. Ann. § 104. Section 10330, 47 Okla. St. Ann. § 105, provides that a violation of this section is a misdemeanor.

Upon the undisputed facts in this case it would seem that the demands of justice and the protection of society clearly required that the penalty prescribed by law for the punishment of the crime of manslaughter in the first degree should have been imposed upon the defendant. However, the court submitted the questions of murder, manslaughter in the first degree and manslaughter in the second degree, and the jury found the defendant guilty of the lowest degree. It is the province of the jury, if the defendant is found guilty, to determine and fix the degree by their verdict, and it has been repeatedly held by this court that if the jury in a homicide case find the defendant guilty of a lower degree, where the law and the facts make it a higher degree, it is an error in favor of the defendant of which he cannot complain. Wilmoth v. State, 20 Okla. Cr. 453, 203 P. 1055, 21 A.L.R. 590.

Our conclusion is that the defendant had a fair trial, and that under the evidence he could have been rightfully

convicted of a higher degree than he was. Nevertheless, upon the record before us our duty is performed by an affirmance of the judgment. It is so ordered.

DAVENPORT, P. J., and BAREFOOT, J., concur.