## W. R. TUCKER v. STATE.

No. A-9396. June 30, 1939.

(92 P. 2d 595.)

336

Billingsley & Kennerly, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Hubert Hargrave, Co. Atty., of Wewoka, for the State.

BAREFOOT, J. The defendant was charged in Seminole county with the crime of murder; was tried, convicted of manslaughter in the first degree, and his punishment assessed by the jury at ten years in the penitentiary, and has appealed.

This charge is based upon the fact that defendant, on the night of October 26, 1936, while under the influence of intoxicating liquor, and in the operation of his automobile, killed Hugh Reynolds, a special deputy sheriff, upon Highway No. 270, between Seminole and Shawnee, and in Seminole county.

The facts were that many people were returning from a football game, and an accident had occurred on the highway and two young students had been killed. The officers had been summoned to the scene, and several officers, including the deceased, Hugh Reynolds, were engaged in clearing the traffic, where the accident had occurred. Cars were lined up along the highway on both sides of the wrecked cars, for a distance of from 100 to 200 yards. The defendant, who was accompanied by a man by the name of Turner, was driving on said highway, with the intention of going to a nearby dance hall. Instead of lowering his speed defendant drove through the line of cars at a high rate of speed. Witnesses testified that he was going 35 to 40 miles per hour, and in disregard to the signals of the officers, and especially the deceased, who had a flashlight,

and tried to signal him down. He struck the deceased and pinned him between defendant's car and one of the wrecked cars. When told by the officers he had killed a man, defendant said: "To hell with him, I have got to get out of here," and tried to start his car several times. Many witnesses testified that defendant was not only under the influence of intoxicating liquor, but that he was drunk and staggered when attempting to walk. He was finally taken to the police station, and officers, and also a physician, who was called to examine him, testified that he was not only under the influence of liquor, but was drunk, and they could detect it upon his breath.

Other witnesses, who had seen him a short while before the collision, testified to his being under the influence of liquor, and witnesses testified that shortly after the collision he stated that he had several drinks prior thereto. There was also found in his car, immediately after the collision, an empty whisky bottle from which could be detected the smell of whisky and also two empty soda pop bottles.

The defendant testified that he had not drunk any whisky; that he was not under the influence of intoxicating liquor; that he had only drunk one bottle of beer during the day; that he was driving only 25 miles an hour; that he did not see the lights, only the ones which blinded him, and that it was impossible for him to stop his car after he saw the danger. Other witnesses, testifying for defendant, testified that he was not under the influence of intoxicating liquor, in their opinion, at the times they saw him just before the collision. Others testified to his good character and reputation prior to the filing of this charge against him.

It is urged by defendant that this case should be reversed for the reason:

First. The court erred in failing to submit to the jury an instruction upon manslaughter in the second degree.

Second. Because of error in certain instructions given by the court.

With reference to the first assignment of error, no case is cited in defendant's brief to support his contention. The record discloses that no instruction was prepared by counsel covering this proposition, and refused by the court, only a suggestion or request to the court that an instruction be given submitting to the jury manslaughter in the second degree. It will be noted that the information in this case charged the defendant with the crime of murder. It has often been held that this covers the lesser degrees of manslaughter in the first and second degrees. Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412, and cases reviewed therein.

The information further sets out in this case the manner of how the homicide was committed, viz., that while defendant was under the influence of intoxicating liquor and operating a certain motor vehicle upon the public highway, he drove the same upon the body of the deceased, and as the result of the wounds received deceased was killed.

The statutes of this state, Oklahoma Statutes 1931, § 10324, 47 Okla. St. Ann. § 93, provides:

"It shall be unlawful for any person who is under the influence of intoxicating liquor, or who is a habitual user of narcotic drugs, and the having on or about one's person or in said vehicle of said intoxicating liquor is prima facie evidence of a violation of this act, to operate or drive a motor vehicle on any highway within this state, as defined in section 1, of this act, and any person violating the provisions of this section shall be deemed guilty of a felony and shall be punished by imprisonment in the penitentiary not more than one year, or by fine of not more than two thousand ($2,000.00) dollars, or by both imprisonment and fine."

The statute defining murder, Oklahoma Statutes 1931, § 2216, 21 Okla. St. Ann. § 701, provides:

"Homicide is murder in the following cases.

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being.

"2. When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

The statute defining manslaughter in the first degree, Oklahoma Statutes 1931, § 2223, 21 Okla. St. Ann. § 711, is as follows:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

It will be noted that the above statutes state that a killing of a person while engaged in the commission of a felony is murder, and while engaged in a misdemeanor is manslaughter in the first degree. The evidence in this case would have amply justified the jury in finding defendant guilty of murder under the above statute, but, as is often the case in the deliberation of juries, the defendant was given the benefit, and the jury only found him guilty of manslaughter in the first degree. It has often been held by this court that where a defendant is convicted of a

lesser degree, the verdict will not be set aside because he should have been convicted of a higher degree. The error, if any, is to his benefit, and he therefore cannot complain. Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285; Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412. See, also, the following late cases of this court construing the principles of the statute quoted: Clark v. State, 63 Okla. Cr. 138, 73 P. 2d 481; Williams v. State, 63 Okla. Cr. 234, 74 P. 2d 632; Haithcock v. State, 63 Okla. Cr. 276, 74 P. 2d 641.

It has often been held by this court that it was the duty of the trial court to instruct on the law of manslaughter if there is any evidence that the alleged crime might have been done under circumstances that would reduce the crime from murder to manslaughter. Hopkins v. State, 4 Okla. Cr. 194, 108 P. 420, 111 P. 947; Ryan v. State, 8 Okla. Cr. 623, 129 P. 685. In the case of Updike v. State, 9 Okla. Cr. 124, 130 P. 1107, 1110, the court says:

"This makes it the duty of the trial court to give to the jury such instructions as the court may think necessary for their information in giving their verdict. This vests the matter of the instructions to be given in the discretion of the trial court. It is true that this discretion is subject to review upon appeal, but it will not be disturbed unless the record presents a clear case of abuse of discretion. No conviction should be reversed for the failure of the trial court to instruct upon any given issue, unless from the testimony in the case it appears that an honest and intelligent jury could legitimately arrive at a conclusion favorable to the defendant upon such issue. We fail to find any evidence in this record upon which an intelligent and honest jury could have convicted appellant of manslaughter in the second degree. The action of the trial court in giving the instruction complained of is therefore not error."

As stated by the court in that case, there is nothing in the record in this case which required the court to instruct the jury upon manslaughter in the second degree. We do not think it would have been error for the court to have done so, but the verdict of the jury in this case reveals

that had the court done so it would have had no effect upon the verdict for the reason that a punishment of ten years in the penitentiary was assessed by the jury. Under the law they had the right to have assessed a minimum penalty, upon conviction of manslaughter in the first degree, for a period of four years. Had they assessed this minimum punishment, the contention of defendant would be more tenable.

It has often been held by this court that it is unnecessary for the court, in a murder case, to give an instruction submitting the question of manslaughter in the first or second degree, where that issue is not raised by the evidence. Newby v. State, 17 Okla. Cr. 291, 188 P. 124; Collins v. State, 22 Okla. Cr. 203, 210 P. 285, 30 A. L. R. 811, and cases cited therein.

Defendant's second assignment of error is that the court erred in giving to the jury instruction No. 8, which was as follows:

"Gentlemen of the jury, in this case the defendant has submitted testimony directed at proving his good reputation as a citizen of this county and state. Now in this connection you are instructed that such evidence of previous good character is competent in favor of the defendant to show that he would not be likely to commit the crime charged against him; but if from all the evidence the jury are satisfied beyond a reasonable doubt the guilt of the defendant then it is the jury's duty to find the defendant guilty notwithstanding he has previously borne a good reputation as a quiet, peaceable, law-abiding and sober citizen. One always having lived an honest upright life and been a peaceable, sober and law-abiding citizen is not likely to commit a crime as if it were otherwise, and proof of good character may in many cases be sufficient to create a reasonable doubt of guilt although no such doubt could have existed except for such good character. But in this connection you are advised that evidence of good character can only be considered in connection with all the other evidence, facts and circumstances shown in the trial, and if, after considering

all the evidence, including that of good character, the jury entertains no reasonable doubt of guilt they should convict, and that notwithstanding the evidence of former good character."

It is contended that by this instruction the defendant was deprived of his right to have the jury "believe beyond a reasonable doubt," that he was guilty before he could be convicted. We do not so interpret this instruction. Similar instructions have often been approved by this court, and by the Supreme Court of the United States. Hughes v. U. S., 5 Cir., 231 F. 50, certiorari denied, 242 U. S. 640, 37 S. Ct. 112, 61 L. Ed. 541; Morris v. Territory, 1 Okla. Cr. 617, 99 P. 760, 101 P. 111; Cannon v. Territory, 1 Okla. Cr. 600, 99 P. 622; Coleman v. State, 6 Okla. Cr. 252, 118 P. 594; White v. U. S., 164 U. S. 100, 17 S. Ct. 38, 41 L. Ed. 365; 10 A. L. R. 108 (Note) ; Wilson v. State, 3 Okla. Cr. 714, 109 P. 289.

The above instruction fully and fairly presented the question of defendant's evidence of good character to the jury for their consideration, together with the other evidence in the case.

The facts in this case present a picture which, if it was possible, should be brought forcibly before every man, woman, and child in this state who drive an automobile. We see it enacted every day, though not with such fatal results as happened in this case. Only a few years ago a locomotive engine which runs only upon tracks was considered a dangerous instrumentality, and only those were permitted to operate it who were tested, skilled and experienced with its every part and mechanism. Today men, women and children, who not only have no experience, but without any examination as to their physical fitness or qualifications, are permitted to handle a deadly, dangerous, high-powered automobile upon the crowded streets and thoroughfares of this state. They are not only not operated in a careful, prudent manner, with due regard to the rights of others, but at least 10 per cent. of those who drive do so

with utter disregard for the rights of the other fellow. They seem to have but one point of view, and that is they will run faster when you give them more gas, and they have but one desire, and that is to be ahead of the other fellow. This was the picture of the scene at the time of this homicide. In returning from a football game, by reason of fast and careless driving, a wreck had occurred upon the highway and two young students had been killed. Officers, in the discharge of their duty were seeking to clear the traffic. There was a blaze of light at least 200 yards on each side of where the cars had been wrecked, so that anyone in his right senses, and with any regard for the rights of the general public, could not help but know that the operation of his car through that line at an excessive rate of speed was dangerous and hazardous, not only to himself but to many others; but notwithstanding the fact that officers were standing in the line of traffic with flashlight in hand, giving signals to "stop, look, and listen", the defendant not only under the influence of intoxicating liquor, but, according to the testimony of several witnesses, drunk, and staggering, plowed his way through the traffic at a rate of 35 or 40 miles per hour, grazing one officer as he passed, and hurling the deceased to his death. Not only did he not know what he had done, but when told, his remark was: "To hell with him, I have got to get out of here". And his business which made it necessary for him "to get out of there" was that he was going to a dance hall about two miles away.

If it was not for the tragedy enacted, one might say that the one who is generally in the greatest hurry at the street intersections of the cities and towns of Oklahoma is generally going down town for a "coke". Cases like this always have their sad surroundings, but the sadness comes too late. The defendant is a man 50 years of age. Luckily, he has no family. The deceased, whom he killed during the wild ride as related, was his personal friend. He had supported him for sheriff during the recent election in Sem-

344

inole county. No doubt the jury took these facts into consideration and returned a verdict of guilty of manslaughter in the first degree, instead of murder, as the facts would have justified. Williams v. State, 63 Okla. Cr. 34, 74 P. 2d 632. Our only hope is that the tragedy of this case may set an example in Seminole county, and the other counties of this state, that the citizenship in general may know that this court stands ready to enforce the law against those who, while drunk, or under the influence of intoxicating liquor, so drive their automobiles in violation of the laws of this state, and especially when they kill, maim, or murder their fellowmen.

The judgment of the superior court of Seminole county is hereby affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.