## CLOYDE ARTHUR RAY v. STATE.

No. A-10791.   Jan. 28, 1948.
(189 P. 2d 620.)
Rehearing Denied March 31, 1948.

Merle G. Smith, of Guthrie, Chester E. Bender, of Thomas, and Meacham, Meacham, Meacham & Meacham, of Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J.   This prosecution arose out of a collision between an automobile driven by the defendant and one driven by the deceased, Frank Artley, on Highway 33, about two and one-half miles west of Watonga, on Sunday afternoon, October 21, 1945, about 5 o'clock.

The information charged the defendant with the crime of manslaughter in the first degree, and alleged that the death of Frank Artley was proximately caused

by the defendant driving and operating his automobile on the public highway in an intoxicated condition. The jury found him guilty of manslaughter in the second degree and left the punishment to the court. The defendant was sentenced to serve two years in the State Penitentiary and has appealed.

The proof of the state showed that the deceased, together with his wife and 15 year old daughter, left their home in Cimarron county, Okla., for Thomas, driving a Chevrolet automobile. They arrived at the Y, nine miles west of Watonga, between 4 and 5 o'clock p. m.. There they missed the road turning off to Thomas and continued on east toward Watonga. The deceased was driving his automobile about 40 miles per hour on the right-hand or south side of the road. The defendant was driving west from Watonga in a bluish green Ford sedan. Several witnesses testified that the defendant in the operation of his automobile was swerving from one side of the highway to the other. Some of the state's witnesses testified that just before the collision, the car driven by the defendant was on the south or wrong side of the road and that just preceding the collision, both cars turned toward the center of the road, apparently to avoid the collision and they made a head-on crash into each other. The deceased was taken to the hospital where he died in about two hours.

The defendant was taken to the hospital and the attending physician, together with one of the nurses, testified that they could smell alcoholic liquor on his breath. A highway patrolman and a deputy sheriff testified that they attempted to interview the defendant in the hospital, but the defendant talked incoherently and in their opinion was intoxicated. A quart jar filled with wine and a quart jar with just a little wine left in it were found in the defendant's automobile immediately after the collision.

Two youths 16 years of age testified that they had known the defendant for several years. That they saw him in Watonga, about 20 or 30 minutes before the accident and that he was drunk. On cross-examination of these youths, it was disclosed, however, that they had had some difficulty with the defendant a year or so previously and were unfriendly to him.

The defendant testified in his own behalf; that he was 45 years of age and had lived at Thomas since 1938; that he was engaged in the grain business. That on the day of the fatal accident, he had lunch in Clinton and then drove to Custer City to talk over some business matters with a Mr. Rankin. That when he started home he bought a couple of quarts of wine and took two drinks of it. That he went on home to Thomas and stopped at his office. That upon reading his mail, he found some mail that made it important for him to go over to Crescent in Logan county to visit his brother and sister. That he left Thomas at 3:45 p. m. and did not stop until he reached Watonga, where he stopped at the Four Corners cafe. That about a mile east of Watonga it commenced to rain and he decided not to go on to Crescent, and turned around and came back. That he drove west of Watonga on Highway 33 until he had the collision with the Artley car. That he had nothing to drink except the two drinks of wine and that there was about three-fourths of the wine left in one of the jars which he placed under the front seat. That just preceding the collision with the Artley car, he was driving slowly and on the right-hand side of the road. That the car driven by the deceased turned out around a parked car at the side of the road which caused the collision. That he did not know what happened after the collision until late that night

at the hospital. That he did not remember talking to the deputy sheriff or the highway patrolman.

Several witnesses testified as to the good reputation of the defendant. It was also shown that it had been raining, off and on, all day, and the party who purchased the wrecked automobile of the deceased after the collision testified that the rubber hose used in connection with the windshield wiper was rotted to where it would not work.

Lloyd Burcham testified that he was a truck driver and followed the car of the deceased from Supply to Seiling, about a distance of 50 miles. That the car of the deceased drove on the middle or left-hand side of the road all of the time he followed it, and when it met another automobile it would get over just enough to let the car pass.

The first proposition presented in the brief of the defendant is that the court committed error in submitting Instructions Nos. 10 and 14 to the jury. Instruction No. 10 defined the elements of manslaughter in the second degree. Instruction No. 14 advised the jury that if they should find the defendant not guilty of manslaughter in the first degree, then they should consider whether the defendant is guilty of manslaughter in the second degree, etc.

It is contended that the court erred in permitting the jury to find the defendant guilty of manslaughter in the second degree, which they did, if they found him guilty of culpable negligence when no culpable negligence was alleged in the information.

As heretofore noted, the information charged the crime of manslaughter in the first degree and alleged that the death of deceased was proximately caused by the defendant driving his automobile while in an intoxicated

condition on the public highway. There was no allegation in the information that the defendant was driving or operating his automobile in a reckless and careless manner with a culpable disregard for the safety of others, and counsel for defendant contend that the rule of law that the jury may find defendant guilty of any offense, the commission of which is merely included in that with which the accused is charged, applies only where the allegations of the information embrace or cover the included offense, and that therefore in the instant case the failure of the county attorney to allege the elements of culpable negligence in the information prevents the court from submitting the issue of manslaughter in the second degree to the jury.

In the case of Clark v. State, 63 Okla. Cr. 138, 73 P. 2d 481, the defendant was charged with the crime of murder, allegedly committed by driving an automobile into a Dodge automobile occupied by the deceased. Said act allegedly constituted murder for the reason that at the time of the commission of the act, the defendant was committing a felony, to wit: driving an automobile on a public highway while under the influence of intoxicating liquor.

In the second syllabus this court stated the law to be as follows:

"Where defendant is charged in the information with the crime of murder, if the facts warrant, it is not only proper for the court to instruct the jury in reference to manslaughter in the first and second degree, but it is his duty to do so."

In the case of Roberts v. State, 82 Okla. Cr. 75, 166 P. 2d 111, the information charged that the defendant while operating an automobile in an intoxicated condition did run into and strike the deceased with such force

as to cause his death. The defendant Roberts contended in the appellate court that the court erred in refusing to submit the issue of manslaughter in the second degree, and this court reversed the judgment of the trial court upon that issue.

The law of that case as shown by the syllabus is as follows:

"In prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests. * * *

"The driving of an automobile upon the highway with a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and thereby causing the death of another, establishes the crime of manslaughter in the second degree.

"Where evidence is conflicting as to whether defendant was under influence of intoxicating liquor at time he was driving automobile which it is alleged struck and killed the deceased, but there is evidence from which jury could reasonably conclude that defendant was guilty of culpable negligence in the operation of his automobile, trial court erred in refusing to give requested instruction by defendant submitting the issue of manslaughter in the second degree."

We shall take the liberty of quoting from that opinion as this court discusses the question herein involved at length. It was therein stated:

"It is well-settled that in a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests, and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends to prove should be submitted to the jury. Atchison v. State, 3 Okla. Cr. 295, 105 P. 387; Kent v. State, 8 Okla. Cr. 188, 126 P. 1040; James v.

State, 14 Okla. Cr. 204, 169 P. 1127; Mead v. State, 65 Okla. Cr. 86, 83 P. 2d 404; Hodges v. State, 65 Okla. Cr. 277, 85 P. 2d 443; Tucker v. State, 66 Okla. Cr. 335, 92 P. 2d 595; Clark v. State, 63 Okla. Cr. 138, 73 P. 2d 481; Cooper v. State, 61 Okla. Cr. 318, 67 P. 2d 981; Smith v. State, 59 Okla Cr. 111, 56 P. 2d 923, 924.

"In Smith v. State, supra, it is stated:

" 'In the trial of a charge of murder it is the duty of the trial court to determine as a matter of law whether there is any evidence tending to reduce the crime to the lower degrees of homicide, and, if so, it becomes his duty to instruct the jury the law of such lower degree.'

" 'When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only.'

" 'Where there is evidence which tends to reduce the degree of the homicide from murder to manslaughter in either of its degrees, the trial court should give the defendant the benefit of any doubt which the evidence may suggest, and instruct the jury the law of each degree which the evidence tends to prove.'

"By Statute, it is provided: 'When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degree[s] only.' 22 O. S. 1941 § 837.

"Manslaughter in the second degree is defined as follows: 'Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree.' 21 O. S. 1941 § 716.

"This court has had this statute under consideration in many appealed cases involving homicides growing out of the operation of automobiles.

"The case of Nail v. State, 33 Okla. Cr. 100, 242 P. 270, was similar to the case at bar. There, a conviction for manslaughter in the second degree was sustained. This court held that the jury did not find the facts necessary to sustain a conviction for murder or manslaughter in the first degree, but they did find that the death of the deceased was caused by the act of culpable negligence of the defendant. In defining culpable negligence, this court stated: ' "Culpable negligence" is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case.'

"The court also said: 'The driving of an automobile upon the highway, with a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and thereby causing the death of another, establishes the crime of manslaughter in the second degree.'

"In the case of Clark v. State, supra, [63 Okla. Cr. 138, 73 P. 2d [481] 482], the deceased was killed by a truck driven by defendant. This court stated: 'Where defendant is charged in the information with the crime of murder, if the facts warrant, it is not only proper for the court to instruct the jury in reference to manslaughter in the first and second degree, but it is his duty to do so.'

"In that case, as in the instant case, the defendant was charged with driving his automobile while under the influence of intoxicating liquor at the time of the alleged homicide. On the issue as to whether the defendant was intoxicated at the time of the collision, the evidence was in conflict, the same as in the instant case. There would have been sufficient evidence for the jury to have concluded in either case that the defendant was intoxicated or that he was not intoxicated. This court there held that the court properly submitted the issue of manslaughter in the second degree, as the jury, under the evidence, could have found that the defendant was not intoxicated at the time of the commission of the alleged homicide, but that he was guilty of culpable negligence in the operation of

his automobile. See, also, the following cases: Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412; Freeman v. State, 69 Okla. Cr. 164, 101 P. 2d 653; Wilson v. State, 70 Okla. Cr. 262, 105 P. 2d 789; Ansley v. State, 44 Okla. Cr. 382, 281 P. 160; Walters v. State, 57 Okla. Cr. 424, 48 P. 2d 875; Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598; Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285; Sprouse v. State, 52 Okla. Cr. 184, 3 P. 2d 918; Herndon v. State, 38 Okla. Cr. 338, 261 P. 378; Smith v. State, 46 Okla. Cr. 160, 287 P. 1103."

In the case of Tucker v. State, 66 Okla. Cr. 335, 92 P. 2d 595, 596, it is stated:

"Where a defendant is charged with the crime of murder, it is the duty of the trial court to instruct on the law of manslaughter in the first or second degree, if there is any evidence that the alleged crime might have been committed under circumstances that would reduce the crime from murder to manslaughter."

In that case the information charged the crime of murder allegedly committed by the defendant operating his automobile on a public highway while in an intoxicated condition.

In the body of the opinion it is stated:

"It will be noted that the above statutes state that a killing of a person while engaged in the commission of a felony is murder, and while engaged in a misdemeanor is manslaughter in the first degree. The evidence in this case would have amply justified the jury in finding defendant guilty of murder under the above statute, but as is often the case, in the deliberation of juries, the defendant was given the benefit, and the jury only found him guilty of manslaughter in the first degree. It has often been held by this court that where a defendant is convicted of a lesser degree, that the verdict will not be set aside because he should have been convicted of a higher degree. The error, if any, is to his benefit, and he therefore cannot complain. Berry v. State, 54 Okla. Cr. 154,

18 P. 2d 285; Philby v. State [64 Okla. Cr. 1], 76 P. 2d 412. See also the following late cases of this court construing the principles of the statute quoted: Clark v. State [63 Okla. Cr. 138], 73 P. 2d 481; Williams v. State [63 Okla. Cr. 234], 74 P. 2d 632; Haithcock v. State [63 Okla. Cr. 276], 74 P. 2d 641.

"It has often been held by this court that it was the duty of the trial court to instruct on the law of manslaughter· if there is any evidence that the alleged crime might have been done under circumstances that would reduce the crime from murder to manslaughter. Hopkins v. State, 4 Okla. Cr. 194, 108 P. 420, 111 P. 947; Ryan v. State, 8 Okla. Cr. 623, 129 P. 685. In the case of Updike v. State, 9 Okla. Cr. 124, 130 P. 1107, 1110, the court says:

" 'This makes it the duty of the trial court to give to the jury such instructions as the court may think necessary for their information in giving their verdict. This vests the matter of the instructions to be given in the discretion of the trial court. It is true that this discretion is subject to review upon appeal, but it will not be disturbed unless the record presents a clear case of abuse of discretion. No conviction should be reversed for the failure of the trial court to instruct upon any given issue, unless from the testimony in the case it appears that an honest and intelligent jury could legitimately arrive at a conclusion favorable to the defendant upon such issue. We fail to find any evidence in this record upon which an intelligent and honest jury could have convicted appellant of manslaughter in the second degree. The action of the trial court in giving the instruction complained of is therefore not error.' "

The case of Hall v. State, 80 Okla. Cr. 310, 159 P. 2d 283, presents facts which are similar to the instant case. The information alleges substantially the same offense, to wit: manslaughter in the first degree, allegedly committed while the defendant was engaged in a misdemeanor, to wit: driving an automobile on a public highway while in an intoxicated condition.

The law of that case as shown by the second syllabus reads as follows:

"Where one is charged with manslaughter in the first degree under statute providing that one who kills a human being while committing a misdemeanor, shall be guilty of manslaughter in the first degree, and facts justify, the defendant may be found guilty of manslaughter in the second degree upon proper instructions, as an included offense."

In view of the above authorities and in consideration of the facts in the instant case, it is apparent that the court acted correctly in submitting the included offense of manslaughter in the second degree to the jury.

It is contended that the evidence is insufficient to sustain the judgment. We have hereinabove given a brief resume of the evidence. Under the evidence of the state, the jury could have come to the conclusion that the defendant was driving his automobile while he was in a drunken condition. Under the evidence of many witnesses for the state who had occasion to observe the manner in which the defendant was operating his automobile prior to the fatal collision, the defendant was operating it in a reckless manner with a culpable disregard for the rights of others who were using the highway. The evidence under any view which the court might take certainly raised an issue for the determination of the jury.

Complaint is made as to the admissibility of the testimony of two witnesses, one of whom testified about the action of a dark colored Ford with a "34" license that he saw going west out of Watonga about an hour before the accident. It is true that the witness did not know the model of the Ford automobile and did not specifically state it was the automobile being driven by defendant. However, there were many circumstances which would

tend to show that the car observed by this witness was the one driven by the defendant on that occasion. The other witness testified that he saw a green colored car with a "34" license tag going west from the place of the collision, about an hour before it occurred. This witness further testified that he later saw the car involved in the wreck at the collision, and that it looked like the same car.

The testimony of each of these two witnesses concerned a car, which, from their description and the circumstances pertaining to its operation, when considered with all the other evidence including that of defendant himself, strongly indicated that the car they saw was the one being driven by the defendant, and their evidence placed the car in the vicinity where the collision occurred at about the time it occurred.

The Attorney General in his answer brief quotes from the case of Hall v. State, supra, and the language of Judge Barefoot in that case is so applicable to the facts in the instant case that we quote therefrom:

"Unlike the Chandler case, supra, and many of the cases there cited, the defendant here was driving on the wrong side of the highway, and there can be no doubt that his carelessness and negligence was the proximate cause of the collision and the resulting death of the deceased, and the evidence establishes the fact that defendant was under the influence of intoxicating liquor at the time of the collision, which was a very strong circumstance for the consideration of the jury in coming to the conclusion that he was operating his truck in a careless and reckless manner. There is nothing to show any negligence or carelessness on the part of Mr. Johnson, who was driving the car in which the deceased was riding at the time of his death. Under the law, his attempt to turn to the left when he saw that defendant would not yield the

right of way, was clearly an act in an emergency on his part in which he was fully justified under the law."

The judgment of the district court of Blaine county is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.