# JOHNIE HOWARD v. STATE.

No. A-10855.   Nov. 3, 1948.

(199 P. 2d 240.)

Tolbert, Gillespie & Cunningham, of Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The defendant below, Johnie Howard, was charged, tried, convicted of the crime of second degree manslaughter, and sentenced to 90 days in jail and to pay a fine of $500.

The information upon which this conviction was predicated, in substance, alleged that the defendant, on September 23, 1945, in Kiowa county, Okla., did wrongfully, feloniously and with culpable negligence, so drive, his 1934 Buick sedan automobile at a speed greater than would permit him to stop within the assured clear distance ahead having due regard to the traffic, surface and width of the highway and the condition of said highway and the physical condition of the defendant, and as a consequence of said act, in so operating the said automobile, he collided his said automobile with one driven by Emil Koebelen.   The information further alleged that Ethel Karan Koebelen, an infant 11 months old, a passenger in her father's automobile, was killed as a result of said collision.

The information clearly stated a cause of action, and it was not error for the court to overrule the defendant's demurrer.

The real question presented by the record is: Under the law, is the information supported by sufficient competent evidence to sustain the conviction? The evidence at the trial discloses that the collision occurred at the intersection of State Highway No. 44 running north and south, and old State Highway No. 9 running east and west. The south approach to the intersection is uphill, the crest of the hill being between 225 to 275 feet north of the intersection. Leading into Highway No. 9 coming from the south is a lazy curve turning in a northwesterly direction, made lazy or extended by reason of the fact that the fence running north and south and west of the highway and south of the intersection sets back a distance of 22 feet further west of Highway No. 44 than does the fence line running north and south and west of Highway No. 44 north of the intersection. The right of way between fence rows south of the intersection is 101 feet wide. The traveled highway in the center is 30 feet wide. North of the intersection the right of way is 60 feet wide with the traveled highway in the center 30 feet wide. There were no warning signs north of the intersection or at the crest of the hill.

In relation to the facts surrounding the accident, the record discloses that the defendant was estimated to be driving at a speed varying from 45 to 65 miles per hour some distance before arriving at the scene of the accident, but upon being admonished to slow down the sworn positive testimony of William Lee, state's witness, Howard, himself, the defendant, and Joe Kimpton, defendant's witness, he was going 40 to 45 miles per hour at the time of the collision. Mr. Koebelen testified he was coming

on Highway No. 44 from the south headed north approaching the lazy turn into Highway No. 9 which swings off in a northwesterly direction and finally extending out into Highway No. 9 due west.

Mr. Koebelen said he was driving about 30 to 35 miles per hour. Just before he started his left-hand turn into the south prong of the Y lane leading from Highway No. 44 south of the intersection into Highway No. 9 he slowed down to about 8 or 10 miles per hour. Mr. Koebelen said he saw no glow of the automobile lights as it made the crest of the hill coming from the north towards him. He said that he saw Johnie Howard's automobile just as it "got off the west side of the highway and came into the right hand door glass." He estimated Howard was driving 60 to 65 miles per hour. Such an estimate under these conditions we believe is most unreliable. It is apparent that he did not have his eyes on the road to the north, and was paying no attention to the traffic to the north until Howard's automobile suddenly loomed up at his right-hand front door.

The highway patrolman, based upon the length of the skid marks (60 feet from the point where the brakes were applied to the point of impact), testified Howard must have been going 60 to 65 miles per hour. This testimony at best is an estimate, based upon skid marks made on a graveled road in a 1934 Buick sedan, and is at best under the conditions speculative. He further testified that the collision occurred between the fence rows on the north and south Highway No. 44. He said that it was dangerous for a man to proceed in the lazy curve at such a slow rate of speed. He further said that the Koebelen automobile made an improper left-hand turn before reaching the intersection. In other words, he took the lazy turn which

lead off of Highway No. 44 into Highway No. 9 before he reached the intersection.

Ethel Mae Koebelen, the mother of the deceased Ethel Karan Koebelen, testified that she was rendered unconscious in the collision, remained so for three weeks, and all she knew about it was what she had been told since.

All of the witnesses, William Lee for the state, William Brown for the state, Johnie Howard, the defendant, all colored, and Mr. Joe Kimpton, white, witnesses for the defendant and occupants of the Howard automobile, testified, in substance, that as they came over the crest of the hill north of the intersection, the Koebelen automobile, coming from the south going north, began to pull to its left into the center of the road at the same time Johnie Howard applied his brakes and pulled to his right in an effort to avoid colliding with the Koebelen automobile. They testified that the accident occurred in the north and south highway, No. 44, as did the highway patrolman, as hereinbefore pointed out. That Mr. Koebelen left his side of the road, and pulled over on Johnie Howard's side of the road, that after Howard pulled his automobile to the right in an effort to miss the Koebelen automobile, he could not have missed the Koebelen automobile even though he had pulled his automobile to the left of the Koebelen automobile. All of them testified that Johnie Howard was attempting to pass the Koebelen automobile on his right. In attempting to do this he passed over the untraveled portion of the intersection in a southwesterly direction and the two automobiles collided resulting in the death of the infant child of Mr. and Mrs. Koebelen. The foregoing constitutes, in our opinion, a fair analysis of the evidence as revealed from the record.

The record discloses that defendant Johnie Howard had two bottles of beer about 3:30 in the afternoon at Hobart, and two small drinks of whisky about 4:30 p. m., while he and other parties were on their way to Sentinel, Okla. The accident occurred about 9:00 or 9:30 p. m., approximately five hours after Johnie Howard had had his last drink. No whisky was found in the automobile and from an evidentiary standpoint the record fails to establish the defendant was under the influence of liquor at the time of the collision. We might also observe that the county attorney did not believe he was under the influence of liquor or he would have undoubtedly so alleged in the information. This he did not do. However, on the trial of the case the state attempted to show that the defendant Johnie Howard was under the influence of liquor at the time of the collision. To this attempt the defendant objected strenuously. The objection, however, was to no avail, and rightly so. This court has so held in Hall v. State, 80 Okla. Cr. 310, at page 314, 159 P. 2d 283, at page 286, as follows, to-wit:

"The defendant was charged with driving in a reckless and negligent manner. If he was drunk or under the influence of intoxicating liquor at the time this would be a circumstance for the consideration of the jury as to whether he was driving in a reckless and careless manner, and while it may have proved the commission of another offense, it also proved a fact which the jury would have the right to know in coming to a conclusion as to whether the defendant was driving in a careless and reckless manner, and in violation of the statute under which defendant was charged. Often the evidence is so closely connected and a part of the res gestae that the State is permitted to offer evidence though it proves the commission of another crime. Lizar v. State, 74 Okla. Cr. 368,

10

126 P. 2d 552; Zewalk v. State, 73 Okla. Cr. 202 [203], 119 P. 2d 874; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149."

See, also, in this connection Bouyer v. State, 57 Okla. Cr. 22, 43 P. 2d 153.

The jury apparently did not believe defendant was under the influence of intoxicating liquor at the time of the collision herein involved or they would have assessed a much greater penalty than the $500 fine and 90 days in jail. Though the attempt was without probative success, the evidence in relation thereto was admissible.

The decisive issue herein involved is as contained in one assignment of error, "that the verdict of the jury and the judgment of the court is contrary to both the law and the evidence." This contention is predicated upon the rules of the road as defined in Title 69 O.S.A. 1941 § 583, and particularly Rule No. 1, which reads as follows, to wit:

"Rule 1. Vehicles in meeting each other shall keep to the right of the center of the road. * * *"

And Rule No. 4, which reads as follows, to wit:

"Rule 4. All vehicles turning to the left into another road shall pass around the center of the intersecting road before turning. * * *"

The state relies upon the provisions of Title 47 O.S.A. 1941 § 92, which provides as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. * * *"

Thereafter the statute makes the violation of the foregoing provisions a misdemeanor and provides punishment therefor.

When measured by the foregoing rules of the road, the case presents but one issue: Was the defendant guilty of culpable negligence in the operation of his automobile? Was it the failure of Mr. Koebelen to observe Rule No. 1 and Rule No. 4, Title 69 O.S.A. 1941 § 583, or was it the speed at which the defendant, Johnie Howard, was traveling in violation of the provisions of Title 47 O.S.A. 1941 § 92? The answer to these questions seems to us to be obviously clear. If Mr. Koebelen had not taken the short cut from Highway No. 44 into Highway No. 9 by taking the lazy curve and thereby cutting his corners short and placing himself in the wrong lane of traffic, but instead had observed Rule No. 4 and in turning to the left into Highway No. 9 had pulled up to the center of the intersection and had passed around the center of the intersecting road, Highway No. 9, before turning, and had he at the same time observed Rule No. 1, he would have been to the right of the center of the road and would not have been on the wrong side of the road as the record reveals he was at the time of the collision. Moreover, had he observed Rules Nos. 1 and 4, the Johnie Howard automobile would have passed him without this tragic occurrence, because the record reveals that Johnie Howard was at all times on the right side of the road. In this connection the record further shows that Howard endeavored to keep to his right in meeting the Koebelen automobile and to stay on the right side of the road and pass the Koebelen automobile on the right side. Moreover, it shows he did everything possible to avoid the collision when he saw Mr. Koebelen was on the wrong side of the road. The record reveals that Mr. Koebelen

12

did nothing to prevent or avoid the accident, but, to the contrary, the first act precipitating conditions leading up to the collision was his violation of the rules of the road. This violation according to the record placed him on the wrong side of the road, and in violation of the law. In addition thereto, the record discloses he did not keep a proper lookout or do anything to avert the collision. He saw no glow of the Howard automobile lights over the crest of the hill. He saw nothing of the Howard automobile until it "came into his right hand glass door." Under these conditions we can reach but one conclusion, that irrespective of the speed at which the Howard automobile was being driven, Mr. Koebelen's failure to observe the rules of the road was the proximate cause of the collision. It was not the speed at which the defendant was operating his automobile, or his inability to bring it to a stop within the assured clear distance ahead. Had Koebelen kept his automobile on the right-hand side of the road and come to the center of the intersection before making the left-hand turn into Highway No. 9, it is our opinion that there would have been no collision. We are therefore forced to conclude that the record does not support the alleged acts or omissions on the part of the defendant, and that his conduct does not amount to culpable negligence. In this conclusion we are amply supported by the authorities. A case clearly in point is the comparatively recent case of Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598, 599, an exhaustive opinion by Judge Barefoot, in which opinion the discussion substantially covers every aspect of this case. Therein this court said, among many other pertinent and applicable things:

"Culpable or criminal negligence has often been defined by this court as 'the omission to do something which

a reasonable or prudent person would do, or the doing of something which such person would not do under the circumstances surrounding the particular case.' "

See, also, the following cases cited in said opinion: Nail v. State, 33 Okla. Cr. 100, 242 P. 270; Clark v. State, 27 Okla. Cr. 11, 224 P. 738; Kent v. State, 8 Okla. Cr. 188, 126 P. 1040; Wilson v. State, 70 Okla. Cr. 262, 105 P. 2d 789; Freeman v. State, 69 Okla. Cr. 164, 165, 101 P. 2d 653; Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412; Ansley v. State, 44 Okla. Cr. 382, 281 P. 160; Mayse v. State, 38 Okla. Cr. 144, 259 P. 277; Herndon v. State, 38 Okla. Cr. 338, 261 P. 378; Smith v. State, 46 Okla. Cr. 160, 287 P. 1103.

"It is generally recognized that to commit one a criminal, there should be a higher degree of negligence than is required to establish civil liability; the rule in civil liability being based upon the 'preponderance of the evidence,' while in criminal cases one must be convicted 'beyond a reasonable doubt.' * * *

"While the question of proximate cause is generally a question for the jury, in a criminal case the evidence should be such as to justify the finding that one was guilty of 'culpable' or 'criminal' negligence, where one is convicted of manslaughter in the second degree.

"Record examined and found that defendant was driving his automobile upon the proper side of the highway; that the automobile operated by husband of deceased, and in which she was riding, was upon the wrong side of the highway, and that by reason of the facts in the instant case, this was the direct and proximate cause of the collision." Chandler v. State, supra.

In support of the rule on proximate cause, see the following cases cited at page 333 of 79 Okla. Cr. 323, 146 P. 2d 598, in Chandler v. State, supra: 99 A.L.R. 772; Dunville v. State, 188 Ind. 373, 123 N. E. 689; People

v. Barnes, 182 Mich. 179, 148 N. W. 400; Shaw v. Wilcox (Mo. App.) 224 S. W. 58; State v. McIvor, 1 W.W. Harr. 123, 31 Del. 123, 111 A. 616; State v. Long, 7 Boyce, Del., 397, 108 A. 36; People v. Black, 111 Cal. App. 90, 295 P. 87; State v. Schaeffer, 96 Ohio St. 215, 117 N. E. 220, L.R.A. 1918B, 945, Ann. Cas. 1918E, 1137; Jackson v. State, 101 Ohio St. 152, 127 N. E. 870; Norman v. State, 121 Tex. Cr. R. 433, 52 S. W. 2d 1051; O'Mally v. Eagan, 43 Wyo. 233, 2 P. 2d 1063, 77 A.L.R. 582; Hiller v. State, 164 Tenn. 388, 50 S. W. 2d 225. In the Chandler case, supra, 79 Okla. Cr. at page 334, 146 P. 2d at page 603, the court drew a conclusion which is highly appropriate to the facts in the case at bar as follows, to wit:

"There can be no doubt, from the undisputed evidence in this case, that this collision would have occurred regardless of the rate of speed of defendant's car, taking into consideration the rate of speed of the other car, and the distance between the cars at the time the danger was discovered."

Precisely the same situation confronts us in the case at bar. This collision would have occurred regardless of the rate of speed of the defendant's automobile. The reason the collision could not have been avoided was because Mr. Koebelen had placed himself on the wrong side of the road, in a position where the collision was inevitable and unavoidable. In the light of what we have hereinbefore said, the court erred in not sustaining the defendant's motion for an instructed verdict. The evidence was entirely insufficient to make out a case of culpable negligence warranting a conviction of second degree manslaughter. This case must therefore be and is hereby reversed, with directions that the same should be dismissed.

BAREFOOT, P. J., and JONES, J., concur.